[No. 57358-1.   En Banc.   March 5, 1992.]

H. CLARKE SWANSON, *Respondent*, JACK LEDUC, *Plaintiff*, v. LIQUID AIR CORPORATION, *Petitioner.*

514

*Ferguson & Burdell,* by *Henry C. Jameson* and *Alan Bornstein,* for petitioner.

*Vandeberg & Johnson, P.S.,* by *Jerome F. McCarthy,* for respondent.

BRACHTENBACH, J. — This is an action for wrongful discharge. Plaintiff contends that, pursuant to a written memorandum of working conditions, he was entitled to a warning before discharge for fighting on company premises. The Court of Appeals reversed a summary judgment in favor of defendant. We affirm the Court of Appeals.

Since we are reviewing summary judgment granted in defendant's favor, we consider the facts in the light favorable to plaintiff. *Marincovich v. Tarabochia*, 114 Wn.2d 271, 274, 787 P.2d 562 (1990); *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

In 1983, plaintiff worked as a driver for another company providing transportation services to defendant. Defendant, Liquid Air Corporation, solicited his application, and he began working at defendant's Kent distribution center as a cryogenic transport driver in December 1983. Sometime after the first part of 1984, plaintiff was given an employee benefits manual which is distributed to each Liquid Air employee. The benefits manual was later revised and plaintiff received a copy of the 200-page document through the mail.

The revised manual, titled "Your Employee Benefits", contained a disclaimer, the effect of which defendant claims is to render plaintiff an employee at will regardless of any agreement or company promise to the contrary (unless an employment contract is authorized by the president or executive vice-president of the company). There was no reference to the disclaimer in a cover letter; nothing was provided to plaintiff which referenced any specific part of the manual. Plaintiff recalls that he looked closely at the health and welfare benefits section of the manual, but he did not read the entire 200 pages, and he did not read any disclaimer statement.

In 1985, defendant hired additional drivers, making a total of 13. There was resulting unrest among the drivers as to dispatching practices and seniority. In February 1985, the Company's dispatch and equipment supervisor, that supervisor's immediate supervisor, and the manager for labor relations came from company headquarters in California to meet with the Kent distribution center drivers to address the drivers' concerns. The meeting with the drivers lasted 2 days and involved extensive discussion of a 4-page docu-

ment presented to the 13 Kent drivers. The document is titled

LIQUID AIR CORPORATION
MEMORANDUM OF WORKING CONDITIONS
INDUSTRIAL GASES DIVISION
KENT, WA, DISTRIBUTION EMPLOYEES

The Memorandum of Working Conditions was signed by all three company representatives.

Plaintiff stated in an affidavit that the manager for labor relations told the drivers that the Memorandum of Working Conditions " 'was written specifically for you group of drivers because you are not under a union contract' " and " '[w]e want to attract good people and we want to keep good people.' " Clerk's Papers of Appellant, at 82. No mention of a disclaimer was made at the 2-day meeting.

The Memorandum of Working Conditions contains a provision titled "Work Rights". At least 4 hours were spent at the meeting going over the Memorandum of Working Conditions, including the work rights provision, with the manager for labor relations explaining that, under the provision, employees who had not completed 90 days' employment with the company could be terminated at will. As to other employees, the procedures established in the Memorandum would be followed.

The work rights provision stated:

> Dishonesty, drinking or use of drugs on duty, recklessness resulting in an accident, or the carrying of unauthorized passengers shall be deemed sufficient and proper cause for discharge without prior notice. *In all other instances of misconduct, at least one warning, shall be given.* A new employee shall be on a ninety (90) day trial basis, during which period he may be discharged without prior notice.

(Italics ours.) Clerk's Papers of Appellant, at 58.

At the same meeting, a drivers handbook was also distributed. Under the safety rules section, the handbook stated that "[f]ighting, disorderly conduct and horseplay are prohibited." Clerk's Papers of Appellant, at 55.

After the meeting, plaintiff understood that his employment was governed by the Memorandum of Working Conditions.

In August 1985, a second meeting was held between the management team and the truck drivers. This meeting was "called primarily because the company had been notified that the drivers intended to seek representation from Teamsters Local 174." Clerk's Papers of Appellant, at 82. The manager of labor relations stated that "the company would abide by the rules in the agreement and that no union representation would be necessary." Clerk's Papers of Appellant, at 82.

A third meeting was held in November 1985 with the drivers to discuss a revision in the Memorandum providing for a wage increase.

Plaintiff maintains that there was never any mention of a "disclaimer" by any company representative at any time while he was employed by defendant.

On February 6, 1986, plaintiff was involved in a physical altercation with another employee while on company property. The other employee had damaged a company trailer and had not reported it as required by the Memorandum of Working Conditions. Plaintiff insisted that the damage be reported, and in fact reported it himself. Shortly thereafter, the other employee interrupted a conversation between plaintiff and a third employee in the drivers' locker room. After words, the other employee pushed plaintiff in the back and into the drivers' lockers. Plaintiff took the other employee down and applied a police-type choke hold. He then let the other employee go. The other employee attempted to attack plaintiff again. Plaintiff repeated the choke hold maneuver. No blows were struck; the entire incident lasted less than a minute.

Plaintiff immediately notified his supervisors of the incident by phone. He was placed on suspension, and then discharged. The factual averments of plaintiff are not disputed.

Plaintiff brought this suit, alleging that defendant discharged him without prior notice for a reason other than those for which defendant had reserved the right to discharge without prior notice. Defendant moved for summary

judgment, which the trial court granted. The Court of Appeals reversed, holding that the work rights provision in the Memorandum of Working Conditions promised specific treatment in specific situations and that under *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 685 P.2d 1081 (1984), whether plaintiff justifiably relied on defendant's promises contained in the Memorandum is a question of fact. The court determined that plaintiff raised a material issue of fact as to justifiable reliance by presenting evidence that high ranking company officials from corporate headquarters met with the Kent truck drivers to discuss the Memorandum, including the work rights provision, evidence that the Memorandum was issued in an attempt to forestall unionization, and evidence that the company officials represented to the drivers the company's intent to be bound by the terms of the Memorandum. The court reached this conclusion even though defendant claimed that the disclaimer was valid and enforceable.

Defendant sought discretionary review, which this court granted, then remanding the case to the Court of Appeals for reconsideration in light of *St. Yves v. Mid State Bank*, 111 Wn.2d 374, 757 P.2d 1384 (1988). On reconsideration, the Court of Appeals adhered to its original decision. Defendant again sought review in this court.

■ In reviewing a grant of summary judgment, the appellate court engages in the same inquiry as the trial court. *Marincovich v. Tarabochia*, 114 Wn.2d 271, 274, 787 P.2d 562 (1990). Summary judgment is appropriate if

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

CR 56(c); *Marincovich*, at 274. Facts and all reasonable inferences therefrom are considered in the light most favorable to the nonmoving party, and summary judgment should be granted only if, from all the evidence, reasonable persons could reach but one conclusion. *Marincovich*, at 274; *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030

(1982); *Glesener v. Balholm*, 50 Wn. App. 1, 7, 747 P.2d 475 (1987).

Plaintiff maintains that the Memorandum of Working Conditions created contractual rights or promises of specific treatment in specific circumstances which are enforceable obligations of defendant. Defendant maintains that the disclaimer in the benefits handbook is effective as a matter of law to ensure that plaintiff remained a terminable at will employee. Alternatively, defendant argues that even if the Memorandum of Working Conditions created enforceable rights, the prohibition against fighting found in the drivers handbook gave notice to plaintiff that fighting could lead to discharge, and this notice was sufficient warning to satisfy the requirements of the Memorandum of Working Conditions.

The following issues require resolution: (1) whether there are material issues of fact as to whether the Memorandum of Working Conditions modified the previously existing employment relationship; (2) whether the disclaimer is effective as a matter of law thus preserving a terminable at will employment relationship; (3) whether, if the disclaimer is not effective as a matter of law, the statement in the drivers handbook that fighting is prohibited constitutes the warning required by the work rights provision in the Memorandum of Working Conditions; and (4) whether immediate discharge for fighting on the premises was proper regardless of any express provisions to the contrary.

We hold that whether the Memorandum of Working Conditions modified the employment relationship involves material issues of fact precluding summary judgment. We further hold that a disclaimer must be effectively communicated to an employee in order to be effective, and that here, material issues of fact remain as to whether the disclaimer was effectively communicated to plaintiff. In addition, an employer's inconsistent representations and conduct may negate or override a disclaimer; material issues of fact remain as to whether the provisions in the later Memorandum of Working Conditions replaced the disclaimer. As a

matter of law the drivers handbook did not contain the warning required by the work rights provision in the Memorandum of Working Conditions. Under the facts as plaintiff has asserted them, the fighting incident was not cause for immediate dismissal regardless of any express provisions to the contrary.

██ ██ In general, an employment contract indefinite in duration may be terminated by either the employer or the employee at any time, with or without cause. *Thompson v. St. Regis Paper Co., supra* at 223. However, "an employee and employer can contractually obligate themselves concerning provisions found in an employee policy manual and thereby contractually modify the terminable at will relationship." *Thompson,* at 228-29; *see Toussaint v. Blue Cross & Blue Shield,* 408 Mich. 579, 292 N.W.2d 880 (1980). In addition, an employer may expect, if not demand, that employees abide by policies expressed in employee handbooks or manuals, and create an atmosphere where employees justifiably rely on those expressed policies and justifiably expect that the employer will abide by those same policies. *Thompson,* at 230. Thus, this court concluded, absent specific contractual agreement to the contrary, an employer's issuance of an employee policy manual or handbook may lead to obligations governing the employment relationship. *Thompson,* at 229. We held that

> if an employer, for whatever reason, creates an atmosphere of job security and fair treatment with promises *of specific treatment in specific situations* and an employee is induced thereby to remain on the job and not actively seek other employment, those promises are enforceable components of the employment relationship.

*Thompson,* at 230.

As noted, the Court of Appeals reasoned that under the latter analysis material issues of fact remain, precluding summary judgment. We agree, adding that material issues of fact also remain as to whether the Memorandum of Working Conditions contains contractual rights. In examining the issues here, it is important to draw the distinction

between the determination of what constitutes the terms and conditions of the parties' employment relationship, which involves fact questions, and interpretation of contract terms once it is determined what those terms are.

In reviewing the issues in this case, we have in mind the recent decision in *Gaglidari v. Denny's Restaurants, Inc.*, 117 Wn.2d 426, 815 P.2d 1362 (1991). In that case, an employee was given a detailed employee handbook at the outset of employment. The employee signed an acknowledgment agreeing to abide by the terms of the handbook. The employee claimed that the handbook constituted an employment contract modifying a terminable at will relationship. The court concluded that the handbook constituted a contract as a matter of law. The court reasoned that all the requisites of unilateral contract formation existed as a matter of law, but that later revised versions of the handbook did not modify the employment contract because the employee did not receive reasonable notice of changes in the contract. *Gaglidari*, at 433-35. An alcoholic beverage handbook later given the employee did modify the contract, however, as a unilateral modification by the employer of which the employee had the necessary notice, as evidenced by the employee having trained according to the terms of the beverage handbook and having signed an acknowledgment of the handbook. *Gaglidari*, at 435-36.

As *Gaglidari* demonstrates, there are cases where the question whether the employment at will relationship has been modified may be decided as a matter of law by the court. For example, in *Stewart v. Chevron Chem. Co.*, 111 Wn.2d 609, 762 P.2d 1143 (1988), this court recited the familiar principle that interpretation of contracts is a question of law for the court, and then determined that a layoff policy in an employee manual was not a definite promise or commitment on the employer's part. *Stewart*, at 613-14. The particular policy provided that in layoff determinations, "consideration should be given" to certain factors. The court concluded that these terms lacked the specificity necessary to create a binding promise. Further, the employee conceded

that he was not aware of the layoff policy until after he was discharged, and therefore, the court concluded, he could not have relied upon the policy. *Stewart*, at 613-14.

■ The analysis in *Stewart* is consistent with the principle that if reasonable minds cannot differ as to whether language sufficiently constitutes an offer or a promise of specific treatment in specific circumstances, as a matter of law the claimed promise cannot be part of the employment relationship. As we made clear in *Thompson*, however, the issue is one of fact. *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 233, 685 P.2d 1081 (1984).

Thus, in *Gaglidari* the facts could only lead to the conclusion that the employee handbook constituted a unilateral contract which was formed at the outset of the relationship, and the beverage handbook constituted a modification of that contract. In *Stewart* the facts could only lead to the conclusion that no contract could exist at all in the absence of a sufficiently specific contractual promise, nor could there be an enforceable promise of specific treatment in specific circumstances because there could be no justifiable reliance where the employee did not know about the "promise" until after he was discharged.

However, neither *Gaglidari* nor *Stewart* should be read as saying that in every instance the question whether a handbook constitutes a contract or contract modification, or an enforceable promise of specific treatment in specific circumstances, is a question of law for the courts.

We note that some courts have concluded that whether a handbook constitutes a contract is a matter of law for the court. *See, e.g., Stinson v. American Sterilizer Co.*, 570 So. 2d 618 (Ala. 1990); *Robinson v. Christopher Greater Area Rural Health Planning Corp.*, 207 Ill. App. 3d 1030, 566 N.E.2d 768 (1991). However,

> The more modern view — and the view in keeping with the modern analysis of other types of contracts — is that the question whether employee handbook provisions are part of the contract is a question of fact. That is, the analysis is the same as that generally used to determine whether a contract has been formed: Would a reasonable person looking at the

objective manifestations of the parties' intent find that they had intended this obligation to be part of the contract?

1 L. Larson, *Unjust Dismissal* § 8.02, at 8-5 (1988).

Moreover, in *Berg v. Hudesman*, 115 Wn.2d 657, 801 P.2d 222 (1990), we resolved a longstanding inconsistency in this court's decisions, and unanimously held that "extrinsic evidence is admissible as to the entire circumstances under which the contract was made, as an aid in ascertaining the parties' intent." *Berg*, at 667. While *Berg* was specifically concerned with ascertaining the parties' intent as to the meaning of their contract, its analysis is consistent with the idea that whether the parties intended policies in an employment document to be part of their employment contract involves an issue of fact. Also, it is consistent with our analysis in *Thompson v. St. Regis Paper Co.*, *supra*, where we held that the issue is one for the trier of fact.

Turning to this case, and looking first to whether there are material issues of fact as to a possible contract modifying the terminable at will status, the court explained in *Thompson* that

the requisites of contract formation, offer, acceptance and consideration are necessary predicates to establishing that policies in an employment manual are part of the employees' original employment contract or part of the employment contract as modified by the parties.

*Thompson*, at 228.

Here, the 4-page "Memorandum of *Working Conditions*" provided that "[t]his Memorandum will set forth wages, rates of pay, hours of work and *other conditions of employment* which will be reviewed in an annual meeting with all employees present." (Italics ours.) Clerk's Papers of Appellant, at 87. The Memorandum sets out 16 specific conditions of employment, with 14 subparagraphs. It contains the employer's promises and states conditions concerning (1) seniority, (2) work week, (3) vacations, (4) holidays, (5) *work rights*, (6) equipment, accidents and reports, (7) lodging, (8) meals, (9) log sheets, (10) health and welfare, (11) retire-

ment plan, (12) thrift plan, (13) sick leave, (14) safety equipment, (15) funeral leave, and (16) wages.

The work rights provision lists specific employee misconduct which "shall be deemed sufficient and proper cause for discharge without prior notice", for example, use of drugs on duty or carrying unauthorized passengers. The provision states, however, that "*[i]n all other instances of misconduct, at least one warning, shall be given.*" (Italics ours.) Clerk's Papers of Appellant, at 88.

Unlike the alleged contractual promise in *Stewart v. Chevron Chem. Co.*, *supra*, this promise is specific enough to constitute an enforceable contract term, if the trier of fact decides that it is part of the parties' employment contract. Given the facts presented by plaintiff, defendant almost certainly offered the Memorandum in consideration for the employees' promise not to unionize and the employees almost certainly accepted it in consideration for the forgoing of their legal right to unionize.

However, the matter of the parties' intent, *i.e.*, whether they intended any terms in the Memorandum to be part of their employment contract, is a question of fact which we do not decide. *See Thompson*, at 233-34. Plaintiff's uncontroverted factual averments together with the Memorandum give rise to material issues of fact as to the parties' intent. Further, it is a question of fact whether plaintiff and the other drivers rejected union representation because of the defendant's promises in the Memorandum of Working Conditions, thereby furnishing consideration to a new contract by forgoing a legal right.

Our conclusion that it is a factual determination whether the Memorandum of Working Conditions contains contractual terms modifying the previously existing employment contract is in accord with the conclusions of a number of courts. *See, e.g., Wagner v. Globe*, 150 Ariz. 82, 86, 722 P.2d 250, 254 (1986); *Tuttle v. ANR Freight Sys., Inc.*, 797 P.2d 825, 827 (Colo. Ct. App. 1990); *Haselrig v. Public Storage, Inc.*, 86 Md. App. 116, 585 A.2d 294 (1991); *Lukoski v. Sandia Indian Mgt. Co.*, 106 N.M. 664, 666, 748 P.2d 507,

509 (1988); *Small v. Springs Indus., Inc.*, 292 S.C. 481, 486, 357 S.E.2d 452, 454 (1987); *Cook v. Heck's Inc.*, 176 W. Va. 368, 342 S.E.2d 453 (1986); *Thompson v. Kings Entertainment Co.*, 674 F. Supp. 1194 (E.D. Va. 1987).

As noted, the Court of Appeals reasoned that summary judgment was improper under the alternative analysis in *Thompson*. That is, that court reasoned that material questions of fact remain as to whether defendant made promises of specific treatment in specific circumstances which became enforceable parts of the employment contract.

■ We agree that material issues of fact remain as to whether, in the absence of traditional contract analysis, defendant has made a promise of specific treatment in specific circumstances inducing plaintiff to stay on the job and not seek other employment, as described in *Thompson*. If so, the employer may not treat that promise as illusory. *Thompson*, at 230. Moreover, the questions whether statements in employee manuals, handbooks, or other documents amount to promises of specific treatment in specific situations, whether plaintiff justifiably relied upon any such promises, and whether any such promise was breached present material issues of fact. *Thompson*, at 233.

Plaintiff has presented sufficient evidence to take these questions to the trier of fact. As the Court of Appeals noted, viewing the evidence in the light most favorable to plaintiff, high ranking company officials from corporate headquarters met with the Kent facility drivers to go over, at some length, the Memorandum of Working Conditions, spending 4 hours discussing the work rights provision. The Memorandum was issued to induce the drivers not to unionize, and the corporate officials represented to the drivers that the company would abide by the terms of the Memorandum. Plaintiff's affidavit states that the manager of labor relations said that the Memorandum of Working Conditions was "written specifically for you group of drivers because you are not under a union contract" and that "[w]e want to attract good people and we want to keep good people." Clerk's Papers of Appellant, at 82.

Moreover, plaintiff avers that from the time the Memorandum was given to the Kent truck drivers, he believed that his employment was governed by the Memorandum of Working Conditions. Clerk's Papers of Appellant, at 82. He stated that at the second meeting about the Memorandum it was reiterated that the company would abide by the rules in the agreement and no union representation would be necessary. Clerk's Papers of Appellant, at 82. He stated that during his employment with defendant he heard of several other truck driving jobs that were open, and he declared that he never sought other employment because he felt he had secure employment with defendant and it was the best job he ever had. Clerk's Papers of Appellant, at 86.

In sum, whether the Memorandum of Working Conditions contained contractual terms, or promises of specific treatment in specific circumstances, aside from strictly contractual obligations, is for the trier of fact. *See Brady v. Daily World*, 105 Wn.2d 770, 718 P.2d 785 (1986). As emphasized above, the central question here is what are the terms of the parties' employment relationship.

Defendant argues, however, that as a matter of law the disclaimer in the 1984 employee benefits manual was valid and effective, and that in accord with the disclaimer plaintiff was an employee who was terminable at will, *i.e.*, defendant did not have to follow any statements of policy set out in the Memorandum of Working Conditions before discharging plaintiff.

In *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 230, 685 P.2d 1081 (1984), the court recognized in dicta that employers could specifically state in a conspicuous manner that nothing contained in an employment manual is intended to be part of the employment relationship. It is generally recognized that an employer can disclaim what might otherwise appear to be enforceable promises in handbooks or manuals or similar documents. *See generally* H. Perritt, *Employee Dismissal Law and Practice* § 4.10, at 189-90 (2d ed. 1987); Chagares, *Utilization of the Disclaimer*

*as an Effective Means To Define the Employment Relationship*, 17 Hofstra L. Rev. 365 (1989); Note, *Unjust Dismissal of Employees at Will: Are Disclaimers a Final Solution?*, 15 Fordham Urb. L.J. 533, 550 (1986-1987). At a minimum, the disclaimer must state in a conspicuous manner that nothing contained in the handbook, manual, or similar document is intended to be part of the employment relationship and that such statements are instead simply general statements of company policy. *Thompson*, at 230.

Defendant maintains that the disclaimer is conspicuous and unequivocal, and that it expressly limits the effect of any purported promise of continued employment. Defendant maintains that the disclaimer is not inconsistent with any other policies, but instead qualified all other policies governing employment and termination, and thus, like the contract clauses in *St. Yves v. Mid State Bank*, 111 Wn.2d 374, 757 P.2d 1384 (1988), the disclaimer provision should be given effect as a matter of law.

In *St. Yves* there was a written employment contract which expressly provided that it constituted the entire agreement of the parties, and that no modification of the contract could be made unless it was in writing and signed by the party against whom enforcement was sought. *St. Yves*, at 375-76. The employee claimed that certain provisions in the contract were inconsistent, and offered statements in an employee personnel manual to resolve the ambiguity. The court examined the portions of the contract said to create an ambiguity, and concluded that no ambiguity existed. The court also relied upon the parol evidence rule, which provides that extrinsic evidence is not admissible to subtract from, vary, or contradict written contracts which are valid, complete, unambiguous, and not affected by accident, fraud, or mistake. Because it found no ambiguity, the court held that under the parol evidence rule, parol evidence — specifically, the provisions of the personnel policy manual — was not admissible to create an ambiguity in the written contract. The court concluded there was no question of fact to go to the trier of fact,

distinguishing *Thompson* on the basis that there was no written employment contract in *Thompson*. *St. Yves*, at 378-79.

Unlike *St. Yves*, in this case existence of written contractual rights is in dispute. Moreover, *St. Yves* was handed down before our recent unanimous decision in *Berg v. Hudesman*, 115 Wn.2d 657, 801 P.2d 222 (1990).[1] As noted earlier in this opinion, in *Berg* we held that extrinsic evidence is admissible as to the entire circumstances under which the contract was made, to aid in determining the parties' intent. *Berg*, at 667.

Thus, to the extent *St. Yves* depends upon the "plain meaning rule", that parol evidence is inadmissible for purposes of interpreting a contract apparently unambiguous on its face, its reasoning was rejected in *Berg*. *St. Yves* does not resolve the questions in this case.

Defendant also maintains that the effect of a conspicuous disclaimer in an employee handbook is a question of law. In some circumstances it may be possible to determine the effect of a disclaimer as a matter of law. However, ascertaining the effect of a disclaimer will often involve factual determinations which must be resolved by the trier of fact if there are factual disputes or if there is more than one reasonable inference from the evidence. Basically, the question here is whether, in light of all the parties' promises, agreements, representations, and conduct, the Memorandum of Working Conditions was an enforceable part of the parties' employment relationship despite the disclaimer, *i.e.*, is the disclaimer effective? As we explain below, there are a number of relevant factual inquiries which must be resolved before the effect of the disclaimer at issue here can be established.

Before addressing these matters, however, we consider *Messerly v. Asamera Minerals, (U.S.) Inc.*, 55 Wn. App. 811, 780 P.2d 1327 (1989), relied upon by defendant. There, the

---

[1] Our remand of this case to the Court of Appeals for reconsideration in light of *St. Yves* was by order dated March 6, 1990, thus also predating the unanimous opinion in *Berg* (handed down December 6, 1990).

court held that the effect of a conspicuous disclaimer in an employee handbook is a question of law, relying upon *Stewart v. Chevron Chem. Co.*, 111 Wn.2d 609, 613, 762 P.2d 1143 (1988).

As we explained above, however, *Stewart* does not stand for the proposition that whether terms in an employee handbook, manual or the like constitute enforceable promises is always a question of law for the court.

For several reasons, we conclude that here the effect of the disclaimer in the employee benefits manual is for the trier of fact.

■■ First, we hold that in order to be effective, a disclaimer such is at issue here must be communicated to the employee. *See Crain Indus., Inc. v. Cass*, 305 Ark. 566, 810 S.W.2d 910 (1991). That communication must be effective, *i.e.*, there must be reasonable notice to the employee that the employer is disclaiming intent to be bound by what otherwise appear to be promises of employment conditions. *See Morriss v. Coleman Co.*, 241 Kan. 501, 514, 738 P.2d 841, 849 (1987) (failure of employer to present evidence that disclaimer brought to personal attention of employees important in deciding legal effect of disclaimer); *cf. Bankey v. Storer Broadcasting Co.*, 432 Mich. 438, 457, 443 N.W.2d 112 (1989) (employer may unilaterally change written policy if it gives affected employees reasonable notice of the policy changes).

Whether reasonable notice has been given here is a question of fact. Plaintiff alleges that he never read the disclaimer. It was mailed to him in a packet containing some 200 pages. The disclaimer appears on page 6 of the manual. There was no reference in a cover letter calling attention to a disclaimer contained within the packet. The disclaimer was placed in a *benefits manual*. Plaintiff could logically assume that a general disclaimer would not appear in a specialized benefits manual; however, we state this cautiously, since very little of the 1984 benefits manual is in the record and we can only speculate that its contents concern employee benefits and not other employment policies.

Nonetheless, there is a question whether the disclaimer concerned only those policies and procedures relating to subjects which one would consider as the usual benefits, *e.g.*, medical care, vacations, sick leave, life insurance and retirement. Was the benefits manual silent as to termination procedures?

Moreover, the manual mailed to plaintiff was sent to him months after his employment with defendant began. The introductory letter contained within the manual proclaims "WELCOME TO LIQUID AIR!" There is a question as to whether the manual applies only to new employees. *See Haselrig v. Public Storage, Inc.*, 86 Md. App. 116, 129, 585 A.2d 294, 301 (alleged disclaimer at end of handbook section concerning probationary employment period leaves critical question of whether disclaimer intended to apply to all employees).

Plaintiff did not sign anything acknowledging the disclaimer. In this regard, this case is different from a great many cases where disclaimers have been found effective. For example, in each of the following cases where disclaimers were upheld, the court noted that the employee signed a document containing the disclaimer: *Shelby v. Zayre Corp.*, 474 So. 2d 1069 (Ala. 1985); *Chesnick v. Saint Mary of Nazareth Hosp.*, ___ Ill. App. 3d ___, 570 N.E.2d 545 (1991); *Wing v. Anchor Media, Ltd.*, 59 Ohio St. 3d 108, 570 N.E.2d 1095 (1991); *Freyre v. Revlon, Inc.*, 136 A.D.2d 514, 524 N.Y.S.2d 40 (1988); *Eldridge v. Evangelical Lutheran Good Samaritan Soc'y*, 417 N.W.2d 797 (N.D. 1987); *Holloway v. K-Mart Corp.*, 113 Wis. 2d 143, 334 N.W.2d 570 (Ct. App. 1983).

This is not to say that merely having an employee sign a disclaimer will render it effective in every instance. For example, the Michigan Supreme Court noted that its decision in *Scholz v. Montgomery Ward & Co.*, 437 Mich. 83, 468 N.W.2d 845 (1991) recognized that "once a disclaimer providing employment at will is signed by an employee, *excepting any subsequent modification*, the employee may be

terminated for any, or no, reason." (Italics ours.) *Scholz*, 468 N.W.2d at 849.

However, had plaintiff signed a document acknowledging the disclaimer, that fact would go to the issue of effective communication. *Cf. Gaglidari v. Denny's Restaurants, Inc.*, 117 Wn.2d 426, 436, 815 P.2d 1362 (1991).

Plaintiff states that the disclaimer was never brought to his attention by any company representative, despite several meetings by high level company officials with the small group of Kent truck drivers. These claims involve factual assertions.

In sum, whether reasonable notice of this disclaimer was given to plaintiff is a question for the trier of fact.

However, even if *notice* of the disclaimer was sufficient, there remains an additional issue in need of resolution. That is, even if the disclaimer was effectively communicated, does it apply to preclude either contract formation as to the Memorandum of Working Conditions or justifiable reliance on the promises contained therein? This issue is inextricably related to the central inquiry here, that is, what are the terms of the parties' employment relationship? As a factual matter, did the Memorandum of Working Conditions modify or replace the previously existing employment contract?

The disclaimer at issue states:

The Company may revise or discontinue policies, procedures or benefits described in this handbook, and/or institute new policies, procedures or benefits. Neither this handbook nor any other Company policies, procedures or practices (whether verbal or written) or the acceptance or continuance of employment is to be construed as a contract of employment (which can only be authorized by the President or Executive Vice President), a promise of continued employment, or as creating an implied or contractual duty between an employee and the Company. To the contrary, all employment can be terminated by the employee or by the Company for reasons which either the employee or the Company, as the case may be, considers sufficient.

Clerk's Papers of Appellant, at 51.

Defendant reasons this disclaimer unequivocally notified all employees that no promise could be relied upon by the employees to limit defendant's right to discharge for any reason it deemed sufficient. Defendant reasons that in light of the disclaimer, the work rights provision in the Memorandum of Working Conditions was simply not a promise. Defendant also states that the benefits "manual specified that only its president or executive vice-president could authorize a contract of employment modifying the at-will rule." Petition for Review, at 11.

On its face, the disclaimer purports to conclusively establish that all employees are terminable at will (last sentence, particularly) and that nothing defendant ever has done or ever will do by way of promises to employees can constitute a binding obligation on its part — with the apparent exception that the president or executive vice-president of the company can "authorize" a "contract of employment".

We reject the premise that this disclaimer can, as a matter of law, effectively serve as an eternal escape hatch for an employer who may then make whatever unenforceable promises of working conditions it is to its benefit to make.

■ An employer's inconsistent representations can negate the effect of a disclaimer:

> Other employer statements that contradict the disclaimer, however, may act to negate and override the disclaimer. Such a result may occur since the terms of the employment relationship that are inconsistent, and thus ambiguous, become subject to interpretation as questions of law or questions of fact. Furthermore, a presumption exists that ambiguous contract terms will be resolved against the party choosing the words of the contract.
>
> Communications containing statements that have overcome disclaimers have included employee policy manuals and oral assurances. Examples of statements that have overrun disclaimers to the contrary are detailed grievance or disciplinary procedures to be taken before discharge and exclusive lists of reasons for discharge. Moreover, statements espousing job security, permanent, continuous, or future employment, and statements speaking of salary in specific periodic terms, may be found to override disclaimers defining the employment relationship as terminable at the will of either party. In addition,

disclaimers may be overcome by contradictory employment practices.

(Footnotes omitted.) Chagares, *Utilization of the Disclaimer as an Effective Means To Define the Employment Relationship*, 17 Hofstra L. Rev. 365, 392-93 (1989); *accord*, Practising Law Inst., *Advanced Strategies in Employment Law* 485, 488 (1987) (under disclaimer approach, the employer's practices must at all times be consistent with at-will employment, and the employer's practices must be monitored so that consistency is assured); *see* Note, *Unjust Dismissal of Employees at Will: Are Disclaimers a Final Solution?*, 15 Fordham Urb. L.J. 533, 562 (1986-1987) (disclaimers merely provide one factor in analysis in a wrongful discharge case and should be balanced against other employer manifestations concerning potential job security).

The Michigan Court of Appeals has recognized that under some circumstances, "verbal promises may negate the effect of written disclaimers which are intended to absolve employers from liability for policies presented in the employer's literature." *Wilson v. General Motors Corp.*, 183 Mich. App. 21, 32, 454 N.W.2d 405 (1990) (citing *Kari v. General Motors Corp.*, 402 Mich. 926, 282 N.W.2d 925 (1978); *Schipani v. Ford Motor Co.*, 102 Mich. App. 606, 614, 302 N.W.2d 307 (1981)); *accord*, *Helle v. Landmark, Inc.*, 15 Ohio App. 3d 1, 10, 472 N.E.2d 765, 775 (1984). In *Brooks v. Trans World Airlines, Inc.*, 574 F. Supp. 805 (D. Colo. 1983), the employee signed an application form including an agreement that he understood that he could be terminated at any time without notice. The court held that an employee displacement clause in the employer's policy manual which the employee received after being hired could only be read as a modification of the original application. *Brooks*, at 810. In *Ferraro v. Koelsch*, 124 Wis. 2d 154, 368 N.W.2d 666 (1985), a general disclaimer in an employment application form was negated by the listing of detailed procedures and specific grounds for discharge in an employment manual.

In *Loffa v. Intel Corp.*, 153 Ariz. 539, 738 P.2d 1146 (Ct. App. 1987), the employee signed a document titled "Employee Agreement" on entering employment; the document contained a statement that the employee agreed that neither the employee's nor his employer's right to terminate employment was restricted. Other documents which the employee received contained detailed disciplinary policies, including descriptions of certain conduct for which termination would be immediate and other circumstances in which warnings would be provided before discharge. The employer argued that the company personnel manual and discipline policy or other practices should not be submitted to the jury in light of the signed "agreement". The court disagreed, stating:

> The terms of the employment agreement are "to be discerned from the totality of the parties' statements and actions regarding the employment relationship." *Wagenseller* [*v. Scottsdale Mem. Hosp.*,] 147 Ariz. [370] at 383, 710 P.2d [1025] at 1038 [(1985)]. . . . If there is a factual dispute as to whether one statement has been supplemented, modified, or contradicted by other actions of the parties, as was the case here, it is the jury's province to resolve it. Although the parties may have agreed tacitly or expressly that their relationship will have some of the characteristics of employment-at-will, the lesson of *Leikvold* [*v. Valley View Comm'ty Hosp.*, 141 Ariz. 544, 688 P.2d 170 (1984)] and *Wagenseller* is that such an agreement is not inconsistent with a jury finding the parties also agreed to supplement or modify their employment contract in accordance with the employer's stated personnel policies and procedures.

(Citation omitted.) *Loffa*, at 545.

We agree with these courts that a disclaimer may be negated by inconsistent employer representations and practices. Like the court in *Loffa* pointed out, there is a fact question here as to whether, even if reasonable notice of the disclaimer was given to plaintiff, the disclaimer was modified or contradicted by terms in the Memorandum of Working Conditions which the parties intended to be terms of the employment relationship despite the earlier disclaimer. All of the circumstances, and the representations and practices of the employer, must be examined in order to determine

the effect of the disclaimer. We do not intend a comprehensive assessment, but several factors which, if proved by plaintiff, cast doubt on the effectiveness of the disclaimer here include the disclaimer's presence in a *benefits* manual which was issued to plaintiff *after* he began work, the extensive representations made to plaintiff that the Memorandum of Working Conditions defined his employment, particularly in the face of labor unrest, and the detailed procedures in the Memorandum, including the work rights provision. Further, presence of the disclaimer in the benefits manual and the absence of any disclaimer in the later, detailed Memorandum of Working Conditions are factors to be considered.

In this regard, this case differs from cases where a disclaimer was contained in the same document said to contain binding promises. *E.g., Castiglione v. Johns Hopkins Hosp.,* 69 Md. App. 325, 517 A.2d 786 (1986), *cert. denied,* 309 Md. 325, 523 A.2d 1013 (1987). *But see, e.g., Perman v. Arcventures, Inc.,* 196 Ill. App. 3d 758, 554 N.E.2d 982 (1990) (language in manual of personnel policies created enforceable rights despite presence of disclaimer in manual).

█ We note that even if a disclaimer appears in the same handbook as the relied upon policy, summary judgment may be inappropriate. For example, in *Zaccardi v. Zale Corp.,* 856 F.2d 1473, 1476 (10th Cir. 1988) the court, applying New Mexico law, held that "[n]either a contractual disclaimer nor the fact that a manual is promulgated after an employee begins work is sufficient to justify summary judgment on a claim for breach of contract." The court said that a disclaimer "must be read by reference to the parties' 'norms of conduct and expectations founded upon them.'" *Zaccardi,* at 1476-77 (quoting *Hillis v. Meister,* 82 N.M. 474, 476, 483 P.2d 1314, 1317 (1971)). The Oklahoma Court of Appeals reached a similar conclusion in *Johnson v. Nasca,* 802 P.2d 1294 (Okla. Ct. App. 1990). In *Johnson,* at 1297, the court explained that while an employer may disclaim

creation of contractual rights, such a disclaimer must be clear. Here, the handbook [containing the disclaimer], when viewed

in conjunction with a pattern of practice indicating the adoption and consistent use of these [disciplinary] procedures, may lead reasonable minds to differing conclusions about the existence of implied contractual rights to use of the procedures. Thus, summary judgment was improvidently granted . . ..

(Footnotes omitted.) *Johnson*, at 1297. *See also Pond v. Devon Hotels, Ltd.*, 55 Ohio App. 3d 268, 563 N.E.2d 738 (1988) (fact questions precluded summary judgment where disclaimer in handbook ambiguous and inconsistent with other representations in handbook).

As a somewhat different matter from an employer's inconsistent representations to its employees, if defendant's argument were accepted, the employer's right to modify its employment contracts would be unduly limited. An employer is entitled to change its position and agree to be contractually bound to conditions of employment. That may be what happened here. The disclaimer is in a benefits manual evidently distributed generally to defendant's employees. The Memorandum of Working Conditions was specifically written for the small number of Kent drivers. There is a question whether the Memorandum was intended to be a new contract unrelated to the benefits manual, and one to which the disclaimer did not apply. This question again centers around the key inquiry here: What are the terms of the parties' relationship?

As to the language in the disclaimer which defendant claims allows only the president or the executive vice-president to authorize a contract modifying the at-will status, several factors persuade us that this statement does not validate the disclaimer in the face of inconsistent representations. First, and importantly, an employer is not entitled to make extensive promises as to working conditions — promises which directly benefit the employer in that employees are likely to carry out their jobs satisfactorily with promises of assured working conditions — and then ignore those promises as illusory. Second, defendant is an international company with headquarters in California. It seems unlikely that every hiring decision by this multi-

national company must be authorized by the president or executive vice-president. Third, this record is silent as to who authorized the company representatives, including the manager of labor relations, to issue the Memorandum of Working Conditions — it is thus unknown whether the company representatives in fact acted under the authority of the president or executive vice-president. Defendant has never claimed that the Memorandum was unauthorized.

Finally, and perhaps most importantly, the language of the disclaimer does not seem particularly helpful to defendant in any event. It does not say, as defendant claims, that only the president or executive vice-president could authorize a contract modifying the at-will status of the employees. Instead it says that "[n]either this handbook nor any other Company policies, procedures or practices (whether verbal or written) or the acceptance or continuance of employment is to be construed as a contract of employment (which can only be authorized by the President or Executive Vice President) . . .." Clerk's Papers of Appellant, at 51. The meaning of the term "contract of employment" is manifestly unclear, because, as is recognized in *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 229, 685 P.2d 1081 (1984), the terminable at will employee *has* an employment contract — it is simply one that may be ended at any time for any reason. To the extent this disclaimer purports to permit only certain parties to authorize "contract of employment" (which is what it says), it does not affect the issue here. Plaintiff was clearly employed by defendant. He clearly was party to an employment contract — the complete terms of which are in dispute, as is the question whether the employer's promises in the Memorandum of Working Conditions are enforceable. By way of contrast, in the case cited to us by defendant, the disclaimer stated that "no employee or representative" of the employer other than the chief executive officer or the corporate director had "any authority to enter into any agreement extending the employment of any employee for any specific period of time, or to make any agreement contrary" to the

disclaimer. *Vollrath v. Georgia-Pacific Corp.*, 899 F.2d 533, 534 (6th Cir.), *cert. denied*, ___ U.S. ___, 112 L. Ed. 2d 310, 111 S. Ct. 345 (1990).

We do not foreclose the possibility that a statement in a disclaimer might limit the scope of persons with authority to make binding representations to an employee. *See generally* Chagares, *Utilization of the Disclaimer as an Effective Means To Define the Employment Relationship*, 17 Hofstra L. Rev. 365, 393-94 (1989).

We hold that the questions of reasonable notice and of applicability and effectiveness of the disclaimer involve issues of material fact which must be decided by the trier of fact.

Defendant argues, however, that even if the work rights provision contains enforceable employee rights, defendant did not violate the terms of the provision. Defendant claims that plaintiff knew without being told that fighting was prohibited by his employer, and that plaintiff was specifically warned through the drivers handbook that fighting was prohibited. Defendant also attaches importance to the fact that plaintiff knew that another employee had been recently terminated for fighting with a fellow employee, without prior notice.

The work rights provision stated that

[d]ishonesty, drinking or use of drugs on duty, recklessness resulting in an accident, or the carrying of unauthorized passengers shall be deemed sufficient and proper cause for discharge without prior notice. *In all other instances of misconduct, at least one warning, shall be given.*

(Italics ours.) Clerk's Papers of Appellant, at 58. This language clearly means that except for the listed conduct which can lead to immediate discharge without prior notice, at least one warning will be given *in every other instance*. If the work rights provision is binding on the employer, plaintiff was entitled to at least one warning.

Contrary to defendant's assertion, that warning is not found in the drivers handbook. The drivers handbook states that "[f]ighting, disorderly conduct and horseplay are pro-

hibited." Clerk's Papers of Appellant, at 55. This statement is found in a section of the handbook titled "Safety Rules" which includes other rules such as "[h]ard hats, safety glasses and safety shoes will be worn at all producing facilities and during deliveries", Clerk's Papers of Appellant, at 54, and "[r]oped off areas may be entered only by authorized personnel", and "[u]se the right tool for the job". Clerk's Papers of Appellant, at 55. Nothing in the section distinguishes fighting as warranting greater or lesser discipline than any other safety violation, for example, using the wrong tool for the job. Nothing in either the drivers handbook or the Memorandum of Working Conditions suggests that the discipline to be accorded fighting is immediate discharge. Thus, while plaintiff may have known that fighting was prohibited, nothing in the drivers handbook informed him that the consequence for fighting would be immediate discharge. If the work rights provision is binding on the employer, plaintiff was discharged in violation of the warning requirement in the work rights provision.

The trial court also held that fighting was adequate grounds for dismissal regardless of any express agreement limiting the company's right to discharge. In *McIntyre v. Fort Vancouver Plywood Co.*, 24 Wn. App. 120, 129-30, 600 P.2d 619 (1979), the court said that regardless of employment contract provisions,

> [a]n employee's neglect of duty of a substantial character or misconduct which might injuriously affect the employer's business regardless of an express agreement on the subject, constitutes good grounds for discharging the employee.

The Court of Appeals noted that *McIntyre* was not decided on summary judgment, but rather dismissal of the employee there was upheld after a full trial. *Swanson v. Liquid Air Corp.*, 55 Wn. App. 917, 781 P.2d 900 (1989), *remanded*, 114 Wn.2d 1008, *adhered to on remand* (order dated May 23), *review granted*, 115 Wn.2d 1015 (1990). The Court of Appeals said that while fighting on company premises may be neglect of duty or misconduct warranting immediate discharge regardless of policy statements to the

contrary, in this case the question is for the trier of fact. *Swanson*, at 923.

Defendant has not raised an argument like that addressed in *McIntyre* at this level of the proceedings. In any event, if the facts are as plaintiff states them, we conclude that the fighting incident in this case does not rise to such a level as to justify immediate discharge in contravention of a binding company promise that the employee is entitled to one warning, should the trier of fact decide that the company promise is binding and the disclaimer ineffective.

Next, we comment on defendant's claim that the Court of Appeals opinion (and ours) leads to a "one free fight" rule. We do not, and the Court of Appeals certainly did not, condone fighting on company premises. Plaintiff here acknowledges that what he did was wrong. However, if the employer desired to discharge an employee without warning for fighting, it would have been easy to include fighting in the list of misconduct warranting immediate dismissal. It is, after all, defendant which set the policy at issue here.[2]

Finally, as the facts are presented by plaintiff, the apparent fundamental motivation in this case is that of the employer trying to attract and retain good, loyal employees and prevent unionization by setting out certain policies and making certain representations to the employees, but then denying the terms of a written agreement. Perhaps the ultimate resolution of these cases lies in the following observation:

> An employee handbook is only useful if the policies and procedures set forth in it are followed by the employer and its management personnel. Instead of looking for new ways to avoid liability when handbook provisions are not followed, employers should concentrate on setting forth reasonable policies and ensuring compliance with those policies.

---

[2]Defendant claims that under the Court of Appeals' reasoning, plaintiff could not be immediately discharged even if he committed murder or rape, but would first have to be given a warning. Plaintiff agrees, however, that such conduct would call for immediate dismissal regardless of the work rights provision.

Note, *The Use of Disclaimers To Avoid Employer Liability Under Employee Handbook Provisions*, 12 J. Corp. L. 105, 119 (1986-1987).[3] As the New Jersey court said in *Woolley v. Hoffmann-La Roche, Inc.*, 99 N.J. 284, 306, 491 A.2d 1257, 1269 (1985):

> The solution is not deprivation of the employees' claim, but enforcement of the employer's agreement. . . . If, however, the at-will employment status of the workforce was so important, the employer should not have circulated a document so likely to lead employees into believing they had job security.

The Court of Appeals is affirmed and this matter is remanded for further proceedings.

DORE, C.J., and UTTER, SMITH, GUY, and JOHNSON, JJ., concur.

DOLLIVER, J. (concurring) — I agree with the majority that summary disposition of this case would be premature on the record before us. I concur separately, however, for two reasons. First, I disagree that an employer must ensure that each employee is personally aware of a disclaimer in an employee handbook in order for it to be effective. Second, since *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 685 P.2d 1081 (1984), we have had occasion to implement the exceptions to the at will rule. I believe it is time to evaluate their efficacy and draw reasonable limitations to maintain the balance between the interests of employers and employees.

To begin, the rule in Washington continues to be that employment contracts, indefinite as to duration, are terminable at the will of either the employer or the employee. *Gaglidari v. Denny's Restaurants, Inc.*, 117 Wn.2d 426, 432, 815 P.2d 1362 (1991); *Thompson*, 102 Wn.2d at 225 (citing

---

[3]The use of disclaimers has been criticized. As one source has put it: "The disclaimer approach, however, is not likely to improve employee morale, is difficult to administer uniformly, and may be used against the employer in a union organizing effort." Practising Law Inst., *Advanced Strategies in Employment Law* 485, 488 (1987).

H. Wood, *Master and Servant* 134 (2d ed. 1886)). The common law at will rule was criticized because it "gives the employer unfettered control of the workplace and, thus, allows the employer to take unfair advantage of its employees." *Thompson*, 102 Wn.2d at 226. In order to ameliorate the harshness of the at will rule, we addressed the varying legal theories advanced to allow employees a cause of action for wrongful termination. *Thompson*, 102 Wn.2d at 227-33. Our goal was to balance "[a]n employer's interest in running his business as he sees fit" and an employee's interest "in maintaining his employment". *See Thompson*, 102 Wn.2d at 227.

To strike this balance we utilized two legal theories. First, we held that statements in employee handbooks could modify an employee's at will status if the requisites for a unilateral contract were present. *Thompson*, 102 Wn.2d at 228 (citing *Pine River State Bank v. Mettille*, 333 N.W.2d 622 (Minn. 1983)). Second, we held that employee handbook statements may give rise to employer obligations if they create "an atmosphere of job security and fair treatment with promises *of specific treatment in specific situations*". *Thompson*, 102 Wn.2d at 230. We also established a cause of action in tort for wrongful discharge if a termination violates a clear mandate of public policy. *Thompson*, 102 Wn.2d at 232.

In light of these exceptions, we provided that employers could avoid creating obligations from statements made in employee handbooks by

> specifically stat[ing] in a conspicuous manner that nothing contained [in the handbook was] intended to be part of the employment relationship and are simply general statements of company policy.

*Thompson*, 102 Wn.2d at 230.

In this case, Liquid Air Corporation did just that. Page 6 of its revised employee manual was devoted exclusively to a disclaimer statement, which provided:

### DISCLAIMER STATEMENT

The Company may revise or discontinue policies, procedures or benefits described in this handbook, and/or institute new policies, procedures or benefits. *Neither this handbook nor any other Company policies, procedures or practices* (whether verbal or written) or the acceptance or continuance of employment *is to be construed* as a contract of employment (which can only be authorized by the President or Executive Vice President), a promise of continued employment, or *as creating an implied or contractual duty between an employee and the Company*. To the contrary, all employment can be terminated by the employee or by the Company for reasons which either the employee or the Company, as the case may be, considers sufficient.

(Italics mine.) The construction and legal effect of a disclaimer is a question of law. *See Messerly v. Asamera Minerals, (U.S.) Inc.*, 55 Wn. App. 811, 816, 780 P.2d 1327 (1989); *see also Berg v. Hudesman*, 115 Wn.2d 657, 663, 801 P.2d 222 (1990) (construction determining legal effect of a contract is a question of law).

Here, the language of the disclaimer met the requirements we set forth in *Thompson*, and the majority does not contend otherwise. Instead, the majority rejects the disclaimer because it was not "effectively communicated" and because it was placed in a *"benefits manual"*. Majority, at 529-31.

The meaning of "reasonable notice" from which the majority derives the requirement of "effective communication" originates in *Bankey v. Storer Broadcasting Co.*, 432 Mich. 438, 457, 443 N.W.2d 112 (1989). *See Gaglidari*, 117 Wn.2d at 434. In *Bankey*, the court held an employer could unilaterally change from a discharge for cause to an at will policy if the employee was given reasonable notice of the change. The context of *Bankey* indicates that notice is reasonable if employees are given advance notice of the change.

> While we hold today that an employer may make changes in a written discharge-for-cause policy . . ., we caution against an assumption that our answer would condone changes made in bad faith — for example, the temporary suspension of a

discharge-for-cause policy to facilitate the firing of a particular employee in contravention of that policy.

The principles on which *Toussaint [v. Blue Cross & Blue Shield*, 408 Mich. 579, 292 N.W.2d 880 (1980)] is based would be undermined if an employer could benefit from the good will generated by a discharge-for-cause policy while unfairly manipulating the way in which it is revoked. Fairness suggests that a discharge-for-cause policy announced with flourishes and fanfare at noonday should not be revoked by a pennywhistle trill at midnight. We hold that for the revocation . . . to become legally effective, reasonable notice of the change must be *uniformly given to affected employees.*

(Italics mine.) *Bankey*, 432 Mich. at 456-57; *see also Hacht v. Ford Motor Co.*, 186 Mich. App. 517, 522-23, 465 N.W.2d 331 (1990); *Carlson v. Hutzel Corp.*, 183 Mich. App. 508, 514-15, 455 N.W.2d 335 (1990).

As long as employees are notified of specific modifications a reasonable length of time prior to their taking effect, the modifications become part of the employment contract. Uniform notification takes place by disseminating the changes to the employees, just as notification occurs as to other provisions in an employee handbook. While some courts might require employers to ensure every employee is personally aware of the change, *see Crain Indus., Inc. v. Cass*, 305 Ark. 566, 810 S.W.2d 910 (1991), such a requirement would reward employees who failed to read the handbook or its modifications. Reasonable notice should be established when an employer uniformly disseminates specific modifications to affected employees a reasonable length of time prior to their taking effect.

The majority's citations to *Crain Indus., Inc. v. Cass*, *supra*, and *Morriss v. Coleman Co.*, 241 Kan. 501, 738 P.2d 841 (1987) do not support its position that a disclaimer is ineffective if not "effectively communicated".

In *Crain*, the court did state that in order for changes "to be effective [they] must be communicated". However, the court reserved judgment "on the question whether, and under what conditions an employer may effectively modify a handbook with notice to affected employees." *Crain*, 810 S.W.2d at 915.

The issue in *Morriss* was whether there was an implied in fact contract that the employee would be treated fairly and in good faith and would not be discharged except for good cause. *Morriss*, 241 Kan. at 513-14. Thus, whether the employee had actual knowledge of the disclaimer was relevant to that issue. Washington is in accord that all of the surrounding circumstances are relevant in determining whether there is an implied contract not to discharge except for cause. *See Roberts v. ARCO*, 88 Wn.2d 887, 894, 568 P.2d 764 (1977). However, that is not the issue before us here.

The majority also offers no supportable reason why a disclaimer appearing in a manual entitled "Your Employee Benefits" is suspect. The Memorandum of Working Conditions, which sets forth the discharge procedure at issue, also speaks to benefits in its first sentence:

> Liquid Air Corp. wishes to maintain an economic structure of *benefits* for its employees equivalent to its competitors in the industry and comparable to similar jobs in the area in which they work.

(Italics mine.) Moreover, the disclaimer specifically refers to "policies" and "procedures" in addition to benefits. The disclaimer was part of the revised employment manual which was disseminated to employees, including the plaintiff. The disclaimer specifically and conspicuously stated:

> Neither this handbook nor any other Company policies, procedures or practices . . . is to be construed as . . . creating an implied or contractual duty between an employee and the Company.

Further, a disclaimer is not rendered ineffective if the employee handbook in which it is contained is not distributed until after an employee begins work. *See Pine River State Bank v. Mettille*, 333 N.W.2d 622, 625-27 (Minn. 1983).

I would hold that because the disclaimer was specific, conspicuous, included in the revised handbook, and disseminated to the plaintiff, it was effective as a matter of law.

The issue then becomes whether the Memorandum of Working Conditions modified the at will policy of Liquid Air

as to the discharge procedures for drivers. The discharge provision states:

> Dishonesty, drinking or use of drugs on duty, recklessness resulting in an accident, or the carrying of unauthorized passengers shall be deemed sufficient and proper cause for discharge without prior notice. In all other instances of misconduct, at least one warning, shall be given. A new employee shall be on a ninety (90) day trial basis, during which period he may be discharged without prior notice.

The answer is determined by whether this discharge provision is an enforceable obligation under the exceptions in *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 685 P.2d 1081 (1984).

The unilateral contract theory would answer this question by ascertaining if the discharge language was sufficiently definite to constitute an offer and whether the parties manifested an intent to be bound. The theory in *Toussaint v. Blue Cross & Blue Shield*, 408 Mich. 579, 292 N.W.2d 880 (1980) ascertains whether the promise was specific and whether the employee justifiably relied on the promise. Both theories attempt to provide a remedy in situations in which the employer creates an atmosphere wherein an employee reasonably believes a specific procedure or policy is an employer obligation. As was noted by the Michigan Supreme Court, however, "there is no clear consensus as to either the legal theory supporting the handbook exception or the scope of the exception." *Bankey*, 432 Mich. at 448-49.

In Washington, there has been some difficulty applying general contract principles under the unilateral contract theory. For instance, we have not strictly applied contract rules governing the need for a separate consideration to enforce modifications to policies stated in employment manuals, although the majority appears to reinstate such a requirement. Majority, at 524; *see Gaglidari v. Denny's Restaurants, Inc.*, 117 Wn.2d 426, 433, 435, 815 P.2d 1362 (1991). In addition, there appears to be some confusion as to whether mutual assent is required. The majority asserts

mutual assent is necessary, citing *Thompson*. Majority, at 524. In *Thompson*, we stated:

> Furthermore, we note that on this record material issues of fact exist as to whether, under traditional contract analysis, any provisions of the employment manual are part of the appellant's employment contract. For example, the parties may have contractually agreed that statements which are general statements of policy, were to be part of their employment contract. While we have determined that there is no implied contract for termination only for cause, we cannot determine on this record that the parties did not enter into an express contract.

*Thompson*, 102 Wn.2d at 233-34. It is arguable whether this language even refers to the unilateral contract exception. Moreover, in *Gaglidari*, at 434-35, we held that "employee[s] [are] bound by unilateral acts of the employer" as long as the employees are given reasonable notice of those actions. There was no issue in *Gaglidari* as to whether the employer and employee intended for the policies to be part of their employment contract. Rather,

> the handbook language constitutes the offer; the offer is communicated by the dissemination of the handbook to the employee; the employee's retention of employment constitutes acceptance; and by continuing to stay on the job, although free to leave, the employee supplies the necessary consideration.

*Gaglidari*, 117 Wn.2d at 433 (citing *Pine River State Bank v. Mettille*, 333 N.W.2d 622 (Minn. 1983)).

Given these questions and others which will undoubtedly arise in the future if the court attempts to apply strict contract rules to a cause of action that arises outside the normal operation of general contract principles, I would not rely on the unilateral contract theory. Rather, I would allow a cause of action if the employee justifiably relied on a promise of specific treatment in a specific situation.

The majority concludes that every issue presented by this exception involves a question of fact. However, I would hold that whether handbook language is sufficiently definite to constitute a promise of specific treatment in a specific situation is a question of law.

Concededly, our cases have been inconsistent on this point. For example, in *Thompson* we stated:

> On this record we are unable to determine . . . whether any statements [in the policy handbook] amounted to promises of specific treatment in specific situations . . . [This] question[] present[s a] material [issue] of fact. . . .

*Thompson*, 102 Wn.2d at 233. However, in *Stewart v. Chevron Chem. Co.*, 111 Wn.2d 609, 613, 762 P.2d 1143 (1988), we stated, "The interpretation of a writing [language in a policy handbook] is a question of law for the court." The majority characterizes *Stewart* as holding only that reasonable minds could not differ as to whether the handbook language created a specific promise. Majority, at 521-22. That characterization, however, is contrary to the analysis of that issue in *Stewart*.

> The interpretation of a writing is a question of law for the court. . . . The Restatement (Second) of Contracts defines a promise as
>
> > a manifestation of intention to act or refrain from acting *in a specified way*, so made as to justify a promisee in understanding that a commitment has been made.
>
> (Italics ours.) Restatement (Second) of Contracts § 2 (1981). . . .
> Chevron's layoff policy states only that management "should" consider performance, experience and length of service in determining the sequence of layoffs. This does not create an obligation that Chevron will or must consider all three factors. "Should" may be interpreted as discretionary, indicating merely a recommendation or preference. . . .
> Furthermore, Chevron was only required to "consider" these factors; no relative weight or value is assigned to any of the criteria. . . . Thus the wording of § 380 [of Chevron's policy manual] does not set forth the specificity necessary to create a binding promise. . . .

(Citations omitted.) *Stewart*, 111 Wn.2d at 613-14. The court was deciding this issue as a matter of law. It was not, as asserted by the majority, holding that reasonable minds could not differ as to the meaning. If the issue was a question of fact, why did we not let the jury decide if the term "should consider" was sufficient to create a promise of specific treatment? Or, if the language in *Stewart* was sufficient for the court to make its determination as a matter of

law, why is the discharge provision language, which is more definite, not also able to be decided as a matter of law?

Whether a specific promise was made should be a question of law unless there is some dispute as to the content of the promise. If a specific promise was made, it would then be a question of fact whether the employee justifiably relied on the promise under the circumstances. This maintains the balance of interests between employers and employees because it does not encourage every discharged employee to stampede to the courtroom. Employers would not be forced to trial on every wrongful discharge claim, and employees could be certain of trial if specific promises were made.

In this case, I would affirm the Court of Appeals and hold that the discharge provision was sufficiently definite to constitute a promise of specific treatment in a specific situation as a matter of law, and remand for trial to determine whether plaintiff justifiably relied on the discharge provision in light of the disclaimer and other surrounding circumstances.

DURHAM, J., concurs with DOLLIVER, J.

ANDERSEN, J. (concurring) — I generally agree with Justice Dolliver's concurring opinion, and in particular I agree with his statement that whether the language contained in an employee handbook is sufficiently definite to constitute a promise of specific treatment in a given situation is a question of law.

I write separately to express my concern that *Berg v. Hudesman*, 115 Wn.2d 657, 801 P.2d 222 (1990) is being cited by the majority for a broader application than is here at issue. The majority states:

> Thus, to the extent *St. Yves* depends upon the "plain meaning rule", that parol evidence is inadmissible for purposes of interpreting a contract apparently unambiguous on its face, its reasoning was rejected in *Berg*.

Majority opinion, at 528.

In *Berg*, the written lease agreement was obviously ambiguous. In this case the employment relationship was certainly not a traditional integrated written contract. My concern is that the majority's broad characterization of *Berg* will upset the finality of unambiguous integrated written contracts and require every contract dispute to be determined by the trier of fact only after a full trial. In *Berg*, we clarified the law in Washington and reaffirmed the "context" rule, as declared by this court in 1944 in *J.W. Seavey Hop Corp. v. Pollock*, 20 Wn.2d 337, 348-49, 147 P.2d 310 (1944). *Pollock* clearly states:

> May we say here that we are mindful of the general rule that *parol evidence is not admissible for the purpose of adding to, modifying, or contradicting the terms of a written contract, in the absence of fraud, accident, or mistake.* But, as stated in *Olsen v. Nichols*, 86 Wash. 185, 149 Pac. 668 [(1915)], parol evidence is admissible to show the situation of the parties and the circumstances under which a written instrument was executed, for the purpose of ascertaining the intention of the parties and properly construing the writing. Such evidence, however, is admitted, not for the purpose of importing into a writing an intention not expressed therein, but with the view of elucidating the meaning of the words employed. Evidence of this character is admitted for the purpose of aiding in the interpretation of what is in the instrument, and not for the purpose of showing intention independent of the instrument. *It is the duty of the court to declare the meaning of what is written, and not what was intended to be written. If the evidence goes no further than to show the situation of the parties and the circumstances under which the instrument was executed, then it is admissible.*

(Italics mine.) *Pollock*, 20 Wn.2d at 348-49. *See also Berg*, 115 Wn.2d at 669.

When the case arises where a written integrated contract is clear and unambiguous on its face, I would hold that extrinsic evidence is not admissible. Certainty of contract depends on parties being bound to their clearly drafted written contracts.

DOLLIVER, J., concurs with ANDERSEN, J.