HACHT v FORD MOTOR COMPANY (ON REMAND)

Docket No. 124210. Submitted December 26, 1989, at Lansing. Decided August 20, 1990; approved for publication November 19, 1990, at 9:05 A.M.

Patricia Hacht and twenty-seven other test drivers employed by the Ford Motor Company brought an action in the Wayne Circuit Court against Ford, claiming breach of contract, fraud, and promissory estoppel after Ford suspended a policy of automatic salary increases for the drivers. The trial court, John H. Hausner, J., granted partial summary disposition in favor of Ford. The plaintiffs appealed and Ford cross appealed. The Court of Appeals, in an unpublished opinion per curiam, decided June 23, 1986 (Docket No. 82235), held that the trial court erred in granting partial summary judgment of the breach of contract claim regarding Ford's practices, procedures, and representations and the claim of promissory estoppel, and determined that all plaintiffs had presented triable issues. The Supreme Court, in lieu of granting leave to appeal, remanded for reconsideration in light of *In re Certified Question*, 432 Mich 438 (1989), and *Bullock v Automobile Club of Michigan*, 432 Mich 472 (1989). 433 Mich 913 (1989).

On remand, the Court of Appeals *held:*

1. An employer may unilaterally change a written policy if it gives affected employees reasonable notice of the policy change. In this case, whether the plaintiffs received reasonable notice of the suspension of automatic salary increases is a question for the jury.

2. Genuine issues of fact preclude summary disposition of the promissory estoppel claim in this case.

Affirmed in part and reversed in part.

MASTER AND SERVANT — TERMS OF EMPLOYMENT — CHANGES IN TERMS.

An employer may unilaterally change a written policy concerning

REFERENCES

Am Jur 2d, Master and Servant §§ 19, 21, 73.
See the Index to Annotations under Compensation; Labor and Employment; Promissory Estoppel.

a term or condition of employment if it gives affected employees reasonable notice of the policy change.

*Goodman, Eden, Millender & Bedrosian* (by *Ernest Goodman* and *Christopher R. Holliday*), and *Barnhart & Mirer, P.C.* (by *Jeanne E. Mirer*), for the plaintiffs.

*James C. Curtiss,* for the defendant.

Amicus Curiae:

*Clark, Klein & Beaumont* (by *Dwight H. Vincent, J. Walker Henry, Rachelle G. Silberberg,* and *Sheri B. Katzman*), for Michigan Manufacturers Association.

### ON REMAND

Before: GRIBBS, P.J., and SHEPHERD and SULLIVAN, JJ.

PER CURIAM. This matter has been remanded by our Supreme Court for reconsideration in light of *In re Certified Question, Bankey v Storer Broadcasting Co,* 432 Mich 438; 443 NW2d 112 (1989), and *Bullock v Automobile Club of Michigan,* 432 Mich 472; 444 NW2d 114 (1989). 433 Mich 913 (1989). The parties have filed briefs in this matter. In addition, the Michigan Manufacturers Association has filed an amicus curiae brief by leave granted.

The facts, which were set out in our previous unpublished opinion per curiam decided June 23, 1986 (Docket No. 82235), are as follows.

Plaintiffs allege that prior to May 9, 1980, defendant provided to its durability test drivers periodic

automatic salary increases for a six-and-one-half-year period, at which point the maximum salary level was reached. All twenty-eight plaintiffs are durability test drivers who were hired by defendant prior to May 9, 1980. They all claim that they were told in preemployment interviews that they would be subject to defendant's policy of providing periodic automatic salary increases for a six-and-one-half-year period. Plaintiffs contend that they reasonably relied upon, and had legitimate expectations in, defendant's automatic salary increase policy in contemplating, accepting, and performing employment for defendant. Plaintiffs allege that defendant used the policy as an incentive to retain durability test drivers.

Plaintiffs also contend that a November 14, 1978, letter to the durability test drivers from the manager of defendant's Michigan Proving Grounds facility led them to reasonably rely on, and have legitimate expectations in, the automatic salary increase policy. Issued in connection with a union attempt to organize the durability test drivers, the letter compared the nonunion Ford durability test drivers' pay rates over a period of time with the pay rates of unionized Chrysler Corporation endurance drivers. In this letter, defendant showed that the pay rates provided under defendant's six-and-one-half-year automatic salary progression policy was more favorable than the Chrysler union pay rates. Subsequently, and allegedly in reliance upon these representations, plaintiffs voted against union representation. Plaintiffs also contend that this letter constituted an independent binding contract between them and defendant concerning the automatic salary increase policy.

At the time of hiring, each plaintiff signed an "employment agreement" form, which provided in pertinent part:

I understand that my employment is not for any definite term, and may be terminated at any time, without advance notice, by either myself or my employer; that my employment is subject to such rules, regulations, and personnel practices and policies, and changes therein, as my employer may from time to time adopt; and that my employment shall be subject to such layoffs, *and my compensation to such adjustments as my employer may from time to time determine.* [Emphasis added.]

Six of the plaintiffs said they could not recall the circumstances surrounding their signing of the agreement. Twenty-two of the plaintiffs alleged that defendant told them at the time of signing that the agreement dealt only with defendant's patent rights or other matters unrelated to compensation.

On May 9, 1980, defendant unilaterally suspended the automatic salary increase policy for durability test drivers. Plaintiffs filed this action on June 1, 1984, seeking income lost due to defendant's suspension of the automatic salary increase policy. Plaintiffs' complaint included four counts, alleging (i) breach of the automatic salary increase provisions of the employment contract formed by defendant's practices, procedures, and representations, both oral and written, which created reasonable and legitimate expectations on the part of plaintiffs; (ii) fraud in obtaining plaintiffs' signatures on an "employment agreement" form; (iii) breach of a contract formed by a letter provided to plaintiffs during the course of their employment which set out the details of the automatic salary increase policy; and (iv) promissory estoppel.

Defendant moved for summary and accelerated judgment on all counts on the basis of the provision in the written "employment agreement" form signed by all the plaintiffs which expressly pro-

vided that their compensation was subject "to such adjustments as my employer may from time to time determine." The trial judge granted defendant's motion on counts II and III for all twenty-eight plaintiffs. He also granted defendant's motion on counts I and IV with respect to six of the plaintiffs whose affidavits were insufficient to raise an issue of fact with regard to defendant's fraud, deception, or concealment surrounding their signing of the employment agreement. The trial judge held that proof of defendant's fraud was required to support plaintiffs' action.

Plaintiffs appealed and defendant cross appealed as of right. Plaintiffs did not contest the trial court's ruling regarding count II. This Court found in its previous opinion that the trial court did not err in granting defendant's motion for summary judgment with respect to count III of plaintiffs' complaint. We also determined that all twenty-eight plaintiffs presented a triable issue and that the trial court's grant of partial summary judgment on counts I and IV was error. On reconsideration, we again reach the same result.

First, defendant and the association argue that defendant had the right to unilaterally suspend the automatic salary increase schedule and that defendant's oral statements in this case did not create independent contractual rights surviving suspension of that policy. It is clear from *In re Certified Question, supra* at 441, that an employer may unilaterally change a written policy if it gives affected employees reasonable notice of the policy change. However, as our Supreme Court discussed in *Bullock, supra* at 480-481, the factfinder must make a full examination of the terms on which the employment contract is based. The factfinder must consider any express promises or policies and,

where policies have been changed, whether the employer has given reasonable notice.

As we held in our previous opinion, the preemployment oral representations in this case may have survived the signing of the individual employment agreements because of circumstances surrounding plaintiffs' execution of those agreements and defendant's subsequent statements and conduct. We again hold that there is a question of fact concerning the oral representations in this case. As our Supreme Court said in *Bullock, supra* at 481:

> [S]uppose that a policy manual providing for employment at will was extant at the time an employee was hired. Could it be said that such a manual, as a matter of law, precluded the enforceability of a later written contract providing "in so many words" that the employee could not be discharged except for cause? We think not. Likewise, it cannot be said that where an express agreement is alleged preceding an employment manual, the alleged promise is, as a matter of law, unenforceable.

In addition, although defendant sent plaintiffs a letter announcing suspension of salary increases, there is some question whether the letter applied to plaintiffs' automatic salary increase schedule.

Moreover, as our Supreme Court noted in its discussion of "reasonable notice" in *In re Certified Question, supra* at 457:

> Fairness suggests that a discharge-for-cause policy announced with flourishes and fanfare at noonday should not be revoked by a pennywhistle trill at midnight.

The question whether plaintiffs received "reason-

able notice" is a question for the jury in this case, where defendant simply announced that the policy had already been suspended.

We decline to address defendant's claim that plaintiffs' oral contract claims are barred by the statute of frauds. The issue was not raised in the initial appeal of this matter and accordingly is outside the scope of the remand order.

Finally, we do not agree that *In re Certified Question* requires us to reverse our prior ruling that genuine issues of fact preclude summary disposition of count IV, plaintiffs' promissory estoppel claim. The issue here is not whether the "policy" could never be changed, but whether defendant can be estopped from denying a promise repeatedly made after plaintiffs signed the employment agreement disclaimer. As we previously held, there is a genuine issue of fact regarding plaintiffs' reasonable reliance on defendant's promises about the automatic salary increases. Neither *In re Certified Question* nor *Bullock* changes this result.

Affirmed in part and reversed in part.