985 F.2d 559
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Terry BOLEN, Plaintiff-Appellant,
v.
E.I. DU PONT DE NEMOURS, & CO., Defendant-Appellee.
 No. 92-1233.
 United States Court of Appeals, Sixth Circuit.
 Jan. 29, 1993.
 
 Before BOGGS and SILER, Circuit Judges, and LAMBROS, Chief District Judge.*
 PER CURIAM.
 
 
 1
 Terry Bolen was discharged by Du Pont for sleeping on the job. Bolen sued Du Pont for wrongful discharge and breach of contract. Bolen claimed that supervisors at Du Pont had told him that he could only be discharged for just cause. Bolen also claimed that although Du Pont had a written policy prohibiting sleeping on the job, Du Pont only enforced that policy when the sleeping was "willful" rather than accidental. The district court granted Du Pont's motion for summary judgment, holding that even if Bolen could only be discharged for just cause, Bolen's violation of the sleeping prohibition provided the necessary just cause. We affirm.
 
 
 2
 * Terry Bolen began working for Du Pont in 1977 as an industrial laborer in the Car Care Department. At all times since Bolen was hired, employee conduct has been governed by work rules that are stated in Du Pont's "Standards of Conduct." These standards include an express warning that "sleeping during working hours" is cause for corrective action and could be grounds for discharge.
 
 
 3
 In August 1983, a supervisor found Bolen in an isolated portion of the plant, apparently sleeping during work hours. Bolen acknowledged that he was engaged in inappropriate behavior and was placed on probation for one year.
 
 
 4
 As of June 1985, Bolen had worked at Du Pont for eight years and received good or satisfactory ratings on every written evaluation. In the spring of 1985, however, his supervisors had some trouble contacting him by radio. These problems were sorted out in informal conversations.
 
 
 5
 On June 9, 1985, Bolen was working as a gasoline truck driver on the night shift in the resin area. During a tornado watch that night, his supervisors were unable to contact him. After all the employees but Bolen had been notified of the extreme weather conditions, his three supervisors attempted to locate him. After nearly one hour of searching, they found him asleep in the front seat of a flatbed truck that was hidden from view in a remote location.
 
 
 6
 Bolen admitted that he had been asleep for over one hour during a time when he was not on break. He claims that he was very tired that night because he had worked twelve-hour shifts the past four nights and was performing a two-man job the night in question. He states that around midnight, he drove to the south end of the yard to locate empty trailers; while he was looking for a trailer, heavy rain began to fall; he climbed back into the truck and waited for the stormy weather to pass over; and while he was waiting, he fell asleep accidentally.
 
 
 7
 According to his official discharge memo, Bolen was discharged for "willfull sleeping in a remote location."
 
 
 8
 Although Bolen acknowledges that the Standards of Conduct prohibit sleeping on the job and do not differentiate between accidental and willful sleeping, he alleges that his supervisors gave him verbal assurances of job security and that the known unwritten policy at the plant was that accidental sleeping would not lead to termination. He states that on his first day of employment he was told at an employee meeting that employees could not be fired without just cause. At the same meeting, he claims that management explained its progressive disciplinary system consisting of 1) verbal reprimand, 2) written reprimand, 3) suspension, and 4) discharge. Bolen stresses that he never signed an admission that his employment was "at will." Bolen also claims that during a union organizing campaign (ultimately unsuccessful), managers explained to him that he could not be discharged without just cause. Finally, Bolen claims that others have fallen asleep accidentally during a twelve-hour night shift and not been discharged.
 
 
 9
 On May 3, 1991, Bolen sued Du Pont in federal court for wrongful discharge and breach of contract. In October 1991, Du Pont filed a motion for summary judgment. On December 10, 1991, the district court denied Du Pont's motion for summary judgment, concluding that there was a genuine issue of material fact as to whether Bolen could only be discharged for just cause. The district court identified the relevant questions for the jury as: "did 'no sleeping' mean 'no willful sleeping'; and, if so, was plaintiff willfully sleeping?"
 
 
 10
 Du Pont moved for reconsideration, and on January 9, 1992, the district court reversed itself and granted the motion for summary judgment. The district court expressed doubt that Bolen had "just cause" job security, but ruled specifically that because the Standards of Conduct explicitly stated that sleeping on the job was cause for discharge, Du Pont had just cause to terminate Bolen. The court ruled that it was irrelevant that the discharge notice specified that he was discharged for "willfully sleeping in a remote location." The court concluded that "[t]he employer's specific right to discharge cannot be ignored simply because in the notice to the employee the employer added the word 'willfully.' " On February 11, the court denied Bolen's motion for reconsideration.
 
 II
 
 11
 We review de novo the district court's grant of Du Pont's motion for summary judgment. Baggs v. Eagle-Picter Industries, Inc., 957 F.2d 268, 271 (6th Cir.1992). We may affirm the district court only if we determine that the pleadings, affidavits, and other submissions show "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).
 
 
 12
 The moving party need not support its motion with evidence disproving the nonmoving party's claim, but need only " 'show [ ]'--that is, point [ ] out to the district court--that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The pivotal question before us is whether the party bearing the burden of proof has presented a jury question as to each element of its case. Id. at 322. The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present "evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).
 
 III
 
 13
 In its original order, the district court found that there was a genuine issue of fact as to whether Bolen enjoyed "just cause" job security and whether Bolen's discharge was wrongful. Bolen v. E.I. Du Pont de Nemours, No. 91-CV-40208-FL, slip op. at 10 (E.D.Mich. Dec. 10, 1991). Upon reconsideration, the district court ruled that the discharge was lawful even if Bolen enjoyed "just cause" job security. Although the court expressed serious doubts that Bolen did enjoy "just cause" job security, the court did not reverse its earlier ruling that such issue was for the jury. Bolen v. E.I. Du Pont de Nemours, No. 91-CV-40208-FL, slip op. at 4-5 (E.D.Mich. Jan. 9, 1992). Therefore, the central issue before this court is whether there is a genuine issue of material fact as to whether Du Pont had just cause to discharge Bolen. First, however, we will address briefly the issue of whether there is a genuine issue of material fact as to Bolen's "just cause" job security. Both parties addressed this issue at length on appeal. More important, if Bolen has not provided evidence upon which a jury could reasonably find that he enjoyed "just cause" job security, we need not reach the issue of whether Du Pont had just cause to discharge Bolen.
 
 
 14
 * In Michigan, employment relations are presumed to be terminable at the will of the employer or the employee. Lynas v. Maxwell Farms, 279 Mich. 684, 687, 273 N.W. 315 (1937). In Toussaint v. Blue Cross-Blue Shield of Michigan, 408 Mich. 579, 292 N.W.2d 880 (1980), however, the Michigan Supreme Court held that an employer's discretion regarding termination may be limited by express agreement or "as a result of an employee's legitimate expectations grounded in an employer's policy statements." Id. at 598. The court characterized its holding as follows: "We hold only that an employer's express agreement to terminate only for cause, or statements of company policy and procedure to that effect, can give rise to rights enforceable in contract." Id. at 610.
 
 
 15
 Recently, in Rowe v. Montgomery Ward & Co., 437 Mich. 627, 473 N.W.2d 268 (1991), the Michigan Supreme Court discussed the Toussaint doctrine at length, opening its opinion on a cautionary note:
 
 
 16
 In the vast outpouring of ensuing cases, there are indeed situations in which employers have in reality agreed to limit managerial discretion. However, the theory remains troubling because of those instances in which application of contract law is a transparent invitation to the fact finder to decide not what the "contract" was, but what "fairness" requires.
 
 
 17
 Id. at 631 (emphasis in original). The court stated that when considering the contractual implications of an oral statement the court must determine the meaning that a reasonable person in the same circumstances would have attached to the language. Id. at 640. The court recognized that in all employment relationships both the employer and the employee hope that the relationship will be long-lasting and often express that hope in language such as "as long as you do your job." The court, however, stressed that more is needed in order to establish a "just cause" contract: "any orally grounded contractual obligation for permanent employment 'must be based on more than an expression of an optimistic hope of a long relationship.' " Ibid. (quoting Carpenter v. American Excelsior Co., 650 F.Supp. 933, 936 n. 6.
 
 
 18
 We agree with the district court that Bolen's claim is stronger than the claim that the Michigan Supreme Court denied in Rowe, yet weaker than the claim that the Michigan Supreme Court approved in Toussaint. Bolen v. E.I. Du Pont de Nemours, No. 91-CV-40208-FL, slip op. at 4-5 (E.D.Mich. Dec. 10, 1991). In Rowe, the plaintiff claimed to have relied on an oral assurance at her employment interview that as long as sales clerks "generated sales and were honest ... they had a job at Wards." Rowe, 437 Mich. at 642 n. 6. The Michigan Supreme Court ruled that statements such as these were general statements of managerial policy and not statements that one would understand to be offering an express contract. Id. at 642-43. Moreover, in Rowe the plaintiff was given written notice of her employee-at-will status in the employee handbook. Although the plaintiff informed management that she objected to the employee-at-will language, the management never discussed making a specific exception to this policy for the plaintiff. Id. at 644.
 
 
 19
 In Toussaint, the plaintiff relied on both oral statements made during pre-hire interviews that he would not be fired as long as he "did his job" and a company manual which expressly stated that he could be fired "for just cause only." Toussaint, 408 Mich. at 613.
 
 
 20
 In this case, Du Pont never specifically informed its employees of their employee-at-will status as the company did in Rowe. Yet, Bolen cannot point to a written statement of a "just cause" policy at Du Pont as the plaintiff did in Toussaint. Instead, Bolen relies on statements made to him and other employees over the years. Bolen testified that shortly after he was hired, he and other new employees were told that it was Du Pont's policy to discharge employees only for good cause. Moreover, Bolen testified that during a union organizing campaign a personnel manager, during a private meeting, told Bolen that Du Pont would not discharge an employee without good cause and progressive discipline. In addition, Bolen provided deposition testimony of several other employees and managers that supports his claim that Du Pont had communicated a "just cause" policy to its employees.
 
 
 21
 In Toussaint, the Michigan Supreme Court discussed the policy underlying its decision:
 
 
 22
 While an employer need not establish personnel policies or practices, where an employer chooses to establish such policies and practices and makes them known to its employees, the employment relationship is presumably enhanced. The employer secures an orderly, cooperative and loyal work force, and the employee the peace of mind associated with job security and the conviction that he will be treated fairly.... It is enough that the employer chooses, presumably in its own interest, to create an environment in which the employee believes that, whatever the personnel policies and practices, they are established and official at any given time, purport to be fair, and are applied consistently and uniformly to each employee. The employer has then created a situation "instinct with an obligation."
 
 
 23
 Toussaint, 408 Mich. at 613. It is undisputed that Du Pont did not provide its employees with an employment-at-will disclaimer. The issue of whether Du Pont chose to make affirmative policy statements and assured its employees that its policy was to discharge employees only for just cause is in dispute, however. Bolen's claim that a supervisor told him in a private meeting during an unsuccessful union campaign that Du Pont had a "just cause" policy is especially troubling. If Bolen's claims are true, Du Pont may be presumed to have made the oral statements with the hope not only of nurturing a cooperative, loyal, and orderly workforce, but also of defeating the union campaign. If Du Pont has now reaped the benefits of such policy statements, it cannot refuse to abide by its stated policy. See Farrell v. Automobile Club of Michigan, 187 Mich.App. 220, 466 N.W.2d 298 (1990); Hacht v. Ford Motor Co., 186 Mich.App. 517, 465 N.W.2d 331 (1990). Moreover, Du Pont does not deny that the policy statements were made to Bolen during the union campaign. Instead, Du Pont makes unpersuasive arguments that Bolen did not rely on these statements. Therefore, viewing the evidence in a light most favorable to the plaintiff, Bolen has raised a genuine issue of material fact as to whether he had "just cause" job security.
 
 B
 
 24
 Even if we assume that Du Pont's statements created an oral agreement that employees would not be discharged without just cause, Bolen's claim will not survive the motion for summary judgment if accidental sleeping on the job is just cause for discharge. Du Pont's "Standards of Conduct" lists 26 actions that are "contrary to the standards of conduct" and "obviously contrary to the best interest of all concerned." "Sleeping during working hours" is listed as number twelve. The Standards of Conduct makes clear that "[e]mployee action contrary to these regulations will subject the employees to corrective action, including discharge," (emphasis added) and that "[t]he steps for discharge following an act contrary to the Standards of Conduct are the same as that [sic] following probation." In the section that discusses the steps under the corrective action procedure, Du Pont explains "[t]hese corrective actions are intended to be progressive unless it is determined by supervision that the incident is serious enough to bypass one or more steps."
 
 
 25
 Du Pont has clearly stated in writing that sleeping on the job is a valid reason for corrective action. Also, in writing, Du Pont has reserved the discretion to skip "one or more steps" in the disciplinary procedure. Bolen admits that he fell asleep on the job. Therefore, pursuant to the express terms of the Standards of Conduct, even if Bolen had "just cause" job security, Du Pont had just cause to discipline him. Du Pont also expressly reserved the discretion to skip all of the steps in the corrective procedures and thus had the authority to discharge Bolen for violating articulated company policy.
 
 
 26
 However, Bolen may still prevail if he can show that the written policy was selectively enforced and therefore not the actual policy of Du Pont. In Toussaint, the Michigan Supreme Court stated:
 
 
 27
 An employer who only selectively enforces rules or policies may not rely on the principle that a breach of a rule is a breach of the contract, there being in practice no real rule. An employee discharged for violating a selectively enforced rule or policy would be permitted to have the jury assess whether his violation of the rule or policy amounted to good cause. Rules and policies uniformly applied are, however, as much a part of the "common law of the job" and a part of the employment contract as a promise to discharge only for cause.
 
 
 28
 408 Mich. at 624. In Renny v. Port Huron Hospital, 427 Mich. 415, 398 N.W.2d 327 (1986), the Michigan Supreme Court stated:
 
 
 29
 Where an employer has agreed to discharge an employee for just cause only, its decision to terminate the employee is subject to judicial review. The jury decides as a matter of fact whether the employee was discharged for cause. While the jury may not substitute its opinion for that of the employer's [sic], it may determine whether the employee committed the specific misconduct for which he was fired, whether the firing was pretextual, whether the reason for discharge amounted to good cause, or whether the employer was selectively applying the rules.
 
 
 30
 Id. at 429 (emphasis added).
 
 
 31
 Bolen claims that the sleeping prohibition was selectively enforced. In addition, Bolen claims that the selective enforcement of the sleeping prohibition was grounded in a differentiation between accidental and willful sleeping. Although Bolen claims that he has heard about other employees who were not fired for sleeping on the job, he provided no evidence, by affidavit or otherwise, upon which a jury could rely to support this claim. For example, Bolen testified that Bob Johnson, another employee, told him that when the supervisors were searching for Bolen during the stormy weather, they found Johnson asleep in the "truckers' shack," but took no action against Johnson. However, Bolen's statement is hearsay on this point, and he failed to support it with an affidavit from Johnson or any other admissible evidence. Moreover, Ted Morris, one of the supervisors, testified that he did not remember coming across Johnson in the truckers' shack.
 
 
 32
 Bolen's best evidence is Morris's testimony that if he had thought that Bolen fell asleep accidentally, and that he had not intentionally gone to a remote location in order to sleep, he would not have recommended that Bolen be discharged. This testimony does not support Bolen's claim that Du Pont had selectively enforced the sleeping provision, or that Du Pont had communicated to its employees that they would be discharged only for willfully sleeping on the job. To the contrary, Morris's statement is consistent with Du Pont's written policy that a violation of the Standards of Conduct is grounds for corrective action and that management reserves the discretion to decide what corrective action, including discharge, should be taken.
 
 
 33
 Bolen has provided no evidence upon which a jury could reasonably find that Du Pont has selectively enforced its prohibition against sleeping on the job or that Du Pont only disciplines employees for willfully sleeping on the job. Therefore, we affirm the district court's finding that Bolen's violation of the written policy prohibiting sleeping on the job provided Du Pont with just cause for discharging Bolen.
 
 IV
 
 34
 For the foregoing reasons, we AFFIRM the district court's grant of summary judgment to Du Pont.
 
 
 
 *
 Thomas D. Lambros, Chief Judge, United States District Court for the Northern District of Ohio, sitting by designation