483 P.2d 1314

**Richard K. HILLIS, Plaintiff-Appellee,**

v.

**Charles W. MEISTER, President of Eastern New Mexico University et al., Defendants-Appellants.**

**No. 622.**

Court of Appeals of New Mexico.

April 2, 1971.

Matteucci, Franchini & Calkins, Albuquerque, for plaintiff-appellant.

Eugene E. Brockman, Norman E. Runyan, Tucumcari, for defendant-appellee.

David L. Norvell, Atty. Gen., Santa Fe, Mark B. Thompson, III, James C. Compton, Jr., Asst. Attys. Gen., for defendants-appellants.

Paul A. Phillips, Albuquerque, for plaintiff-appellee.

## OPINION

WOOD, Judge.

Plaintiff's suit, involving his teaching contract at Eastern New Mexico University, named various defendants. Although all of the named defendants gave notice of appeal, no judgment was entered against any of the defendants except the Board of Regents. The trial court directed a verdict in favor of plaintiff and against the Regents. The Regents' appeal raises several issues, only two of which require discussion. These are: (1) whether the faculty handbook was a part of plaintiff's contract with the University and (2) the award of costs.

*Whether the handbook was a part of plaintiff's contract.*

■ At the time plaintiff was hired as an assistant professor of art, a faculty handbook had existed for a number of years. Revisions in the handbook was submitted to and approved by the Regents.

The handbook pertained to various aspects of the relationship between the University and its employees. One aspect was the continuance of the services of faculty members—such as plaintiff—in their first year of service. Procedures were set forth in the handbook concerning the treatment of a first year faculty member who was not to be reappointed. The procedure covered both the time and the manner of treatment. These procedures were not followed in plaintiff's case. The evidence is undisputed that in other cases where the procedures were not followed, the person involved had been reappointed to his position. Thus, the uncontradicted evidence is that, under the handbook and the actual practices of the University, plaintiff had an "expectation of reemployment." Fergu-

son v. Thomas, 430 F.2d 852 (5th Cir. 1970).

Plaintiff's written contract with the Regents of the University was for the academic year 1967–68. This contract makes no express reference to the handbook. The contract required plaintiff to " * * * observe and abide by any and all rules, regulations, and directives adopted by the University. * * *" The contract neither identifies these rules, regulations and directives nor indicates where they may be found. Further, the contract makes no reference to the status of plaintiff, in relation to the University, at the end of the time period covered by the contract.

If we consider the contract reference to rules and regulations as rules and regulations applying to the University as well as to the plaintiff, then the contract is ambiguous because such rules and regulations are not identified from the contract itself. In such a case, the construction placed on the contract by the parties would be controlling. Jernigan v. New Amsterdam Casualty Company, 69 N.M. 336, 367 P.2d 519 (1961); see Cochran v. Gordon, 69 N. M. 346, 367 P.2d 526 (1961).

If, however, we consider the contract simply not to cover either the handbook or plaintiff's status with the University at the end of the contract term, we have a situation where a " * * * course of conduct may give rise to a contract implied in fact, * * *" Gordon v. New Mexico Title Company, 77 N.M. 217, 421 P.2d 433 (1966); see Trujillo v. Chavez, 76 N.M. 703, 417 P.2d 893 (1966).

Under either of the two foregoing approaches, the conduct of the parties may define the terms of their contract. Compare § 50A–1–205, N.M.S.A.1953 (Repl. Vol. 8, pt. 2).

Here, the undisputed evidence shows the handbook was treated as controlling the relationship between the plaintiff and the University. This evidence goes to the time when plaintiff entered the contract and to the time when differences between plain-

tiff and the administration had come to light. At a meeting between a grievance committee and the administration, "both parties" referred to the handbook. This evidence also goes to the time when the administration was proceeding to do without plaintiff's services. A faculty committee was appointed but that committee decided it could not undertake the task it was given to do because the committee was not constituted in accordance with the handbook. The administration then undertook to "dismiss" (rather than to nonreappoint) plaintiff in accordance with handbook procedures. The president of the University characterized the handbook as "the most important single document" governing the relationship between the faculty members and the University administration. The president also testified that the handbook contained some of the terms of employment " * * * with respect to academic freedom and tenure and continuance and termination."

A case very similar to this one is Greene v. Howard University, 134 U.S.App.D.C. 81, 412 F.2d 1128 (1969). There it is stated:

> " * * * Contracts are written, and are to be read, by reference to the norms of conduct and expectations founded upon them. This is especially true of contracts in and among a community of scholars, which is what a university is.
>
> * * *
>
> "The employment contracts of appellants here comprehend as essential parts of themselves the hiring policies and practices of the University as embodied in its employment regulations and customs. * * * "

Ferguson v. Thomas, supra; compare Smith v. Board of Regents, State Senior Colleges, 426 F.2d 492 (5th Cir. 1970); Silver v. Queens College of City University, 63 Misc.2d 186, 311 N.Y.S.2d 313 (1970).

The Regents do not claim there is any dispute in the evidence as to the "course of conduct" between the plaintiff and the University administration which applied the handbook to plaintiff's contract. The Regents contend, however, that this course of conduct does not apply to them as the body that contracted with plaintiff. Specifically, they seek a distinction between the Regents and the University administration. This asserted distinction has no factual basis in this case.

The uncontradicted testimony of the Chairman of the Board of Regents is that the Regents approved revisions in the handbook "as administrative purpose only." Administration is management; " * * * the principles, practices, and rationalized techniques employed in achieving the objectives or aims of an organization. * * * " Webster's Third New International Dictionary (1966). Under this definition, the Regents' approval was for the use of the administration in managing the University, in achieving the aims of the University.

The Chairman of the Board of Regents also testified that the Regents' approval was not contractual. The handbook provision involved in plaintiff's case states:

> "ENMU asserts and exercises the discretion implied by annual contracts. However, the institution believes that it should provide each faculty member with timely notice concerning subsequent status. Therefore, the University will:" (hereafter is listed the procedures not followed in plaintiff's case).

Because of the handbook reference to annual contracts, and the Chairman's characterization of the Regents' approval as "not contractual," the Regents seem to contend that the handbook cannot be considered a part of plaintiff's contract. A similar contention was made and rejected in Greene v. Howard University, supra. There it is stated:

> " * * * This qualifying clause [without contractual obligation], so it is said, relieves the University of any and all obligations of any kind with respect to the observance of its regulations, and vests in the University an unfettered discretion * * *.

" * * *

" * * * The very phrase relied upon * * * is in a Faculty Handbook which is replete with other provisions in conflict with the spirit of the use of that phrase now sought to be made. * * *"

In rejecting this argument, Greene made the statement previously quoted. It is to the effect that contracts are to be read by reference to the "norms of conduct and expectations founded upon them." We view this as no more than a specific application, to a University situation, of New Mexico's general rule that a contract may be implied, or an ambiguity in a contract may be resolved, on the basis of the course of conduct of the parties. The conclusion that the handbook and the Regents' approval was "not contractual" is simply not supported by any evidence. The undisputed evidence is the handbook provisions were considered to govern the University's relationship with plaintiff and the Regents' approved revisions in the handbook for use in managing the University.

Finally, under this point, it appears to be contended that the "course of conduct" should not be a rule applicable to the University as a governmental institution. They point out that in Greene v. Howard University, supra, the University involved was private, not public. Our answer is that the issue here does not involve the public or private character of the University. Eastern New Mexico University, through its Regents, has authority "to contract and be contracted with." Sections 73–22–4 and 73–22–36, N.M.S.A.1953 (Repl.Vol. 11, pt. 1). The issue here simply involves the law of contracts. Compare State v. Clark, 79 N.M. 29, 439 P.2d 547 (1968).

The trial court directed its verdict on the basis there was no factual issue for the jury to consider on the question of whether the contract with plaintiff for the academic year 1967–68 had been breached. We affirm the trial court's ruling because the Regents had authorized its administration to manage the University in accordance with the handbook, because the undisputed evidence shows a course of conduct that made the handbook a part of plaintiff's contract and because it is undisputed that the handbook was not followed.

So holding, various other issues raised by the Regents are irrelevant. These are: (a) Plaintiff made four claims in his amended complaint. Some of these alleged a tort. The Regents claim the trial court should have dismissed the tort claims. This issue is irrelevant because plaintiff did not recover on any tort claims and because no tort claim is involved in this appeal. (b) Plaintiff alleged that he had been continued as a faculty member for the 1968–69 academic year. The Regents assert this contractual claim should have been dismissed because of a failure to allege a written contract for the 1968–69 academic year. This issue is irrelevant because no contract involving the 1968–69 academic year is involved in this appeal. The verdict was directed for breach of the 1967–68 contract. (c) The Regents claim they were not estopped from "not reappointing" plaintiff as a professor for the 1968–69 academic year. This is irrelevant because plaintiff's possible position as a professor for 1968–69 is not involved in this appeal. (d) The Regents claim that failure to follow their own regulations might be grounds for reversing their decision to "dismiss" plaintiff but that such failure would not be grounds for an award of damages against the Regents. This issue is irrelevant because the dismissal, and the proceedings taken in connection with the dismissal, is pertinent only as evidentiary matter on the claim that the 1967–68 contract was breached. Whether plaintiff was properly dismissed as a professor in the 1968–69 year is not involved.

*Award of costs.*

■ The judgment awards plaintiff his "taxable costs." Section 21–1–1(54) (d), N. M.S.A.1953 (Repl.Vol. 4) states: " * * * costs against the state, its officers, and

agencies shall be imposed only to the extent permitted by law. * * *"

Plaintiff filed a bill of costs and asked that the items listed be taxed as costs. He claims he is entitled to these costs because no objection was made to his cost bill. The Regents claim no costs should be taxed because authority to do so has not been "provided by law." Both arguments misappraise the situation before us.

All the judgment does is award to plaintiff such costs as are "taxable." Costs cannot be taxed against the Regents under § 21–1–1(54) (d), supra, unless permitted by law. Costs have not been taxed in the record before us so, at this point, we do not know whether any costs will ever be taxed. As to the claim that the Regents made no objection to plaintiff's cost bill, it does not appear that notice, to tax costs, has ever been given. See § 21–1–1(54) (d), supra; Prudential Insurance Company of America v. Anaya, 78 N.M. 101, 428 P. 2d 640 (1967).

The record concerning the costs presents no issue for decision.

The judgment is affirmed.

It Is So Ordered.

HENDLEY and SUTIN, JJ., concur.