[No. 13488-1-III.   Division Three.   June 1, 1995.]

SHARON PAYNE, *Appellant*, v. SUNNYSIDE COMMUNITY HOSPITAL, ET AL., *Respondents*.

*David H. Putney* and *Putney Mazzola Law Offices,* for appellant.

*William R. Hickman* and *Reed McClure,* for respondents.

THOMPSON, C.J. — Sharon Payne appeals the Superior Court's summary dismissal of her action for wrongful discharge against her former employer, Sunnyside Community Hospital. Ms. Payne contends she raised issues of material fact regarding whether (1) disclaimers in the policies and procedures manual provided reasonable notice the Hospital did not intend to modify the employment-at-will relationship, and (2) the Hospital negated the disclaimers by subsequent inconsistent practices. We reverse.

Sharon Payne was employed as Sunnyside Hospital's business office manager for approximately 13 years. In January 1990, the Hospital terminated her. She brought this action for wrongful discharge, alleging the Hospital fired her without cause and without following its own progressive discipline policy. The policy appeared in the Hospital's policies and procedures manual. It provided:

> The hospital has an *obligation to retain employees who are qualified* and, through their job performance, demonstrate

that they are willing to carry out their responsibilities consistently with the policies applicable to their assignments. The hospital will be fair, consistent and impartial in providing proper disciplinary action when any employee fails to observe accepted procedures, policies and standards set forth as requirements of their position. . ..

. . ..

The *steps to be followed in the progressive discipline policy are* as follows:

1) Verbal counseling by the supervisor with written documentation.

2) Verbal warning by the supervisor accompanied by a written documentation submitted to the Personnel Department.

3) Verbal warning, written documentation and an imposed disciplinary probation period not to exceed 30 days.

4) Suspension without pay, pending investigation and probable/possible dismissal, for a period not to exceed three working days.

5) Involuntary termination.

As a general rule, all steps of the progressive disciplinary policy will be used; however, depending upon the severity and circumstances surrounding the action, the procedure may be initiated at any of the before stated steps.

(Italics ours.) The manual also provided the procedures were not subject to waiver or modification "without the express written intent to do so signed by the chief executive officer of the hospital".

The Hospital moved for summary judgment on the ground Ms. Payne's employment was at-will.[1] In arguing its motion, the Hospital contended the following language appearing on the first page of the policies and procedures manual effectively disclaimed any intent on its part to change the at-will status of its employees:

---

[1] The parties disagreed as to whether the Hospital had cause to dismiss Ms. Payne. This dispute is not material to our review of the summary dismissal of Ms. Payne's action. The issue raised by the motion for summary judgment is whether Ms. Payne was an employee-at-will whom the Hospital could fire for any reason, with or without cause.

> The policies and procedures described [here] are implemented at the *sole discretion* of the hospital and are subject to change at any time without prior notice. . . .
>
> . . . .
>
> This [document] is designed to outline general hospital policies and procedures. Nothing contained [here] is to be considered as an employment contract. Employees have the right to resign the employment at any time, without notice, *for any reason or no reason*. The hospital retains a similar right to discontinuation of the employment of any employee.

(Italics ours.) Ms. Payne admitted she had read these disclaimers.

The trial court determined the disclaimers gave employees reasonable notice the Hospital did not intend to be bound by the procedures in the manual. However, the court observed that under *Swanson v. Liquid Air Corp.,* 118 Wn.2d 512, 529, 826 P.2d 664 (1992), inconsistent employer conduct may negate the effect of a disclaimer. It therefore entered an order giving Ms. Payne additional time "to provide facts establishing a practice [by the Hospital] of using progressive discipline . . ., known by [her] and relied upon by [her]".

In an affidavit filed after entry of the foregoing order, Ms. Payne stated the Hospital's Personnel Director, Penney Duren, told her the policies "[had] to be followed and were in fact followed by the hospital in all disciplinary and employee policy decisions". On several occasions, she personally consulted with Ms. Duren about disciplinary matters involving her employees. Ms. Duren provided guidance and assistance both in application of the rules and to determine whether she "had complied with the rules and could take the next step in the process".

Ms. Payne also attested the Hospital's assistant administrator, Terry Laitala, told her "the personnel policies were to be applied to all personnel actions that were taken". She recalled one situation in which she consulted with Mr. Laitala concerning a clerk who had an unacceptable error rate. He told her she had to follow the person-

nel policies. After she did the appropriate documentation, he gave her permission to terminate the employee. As further evidence the Hospital intended its managers use progressive discipline, Ms. Payne referred to the circumstances of her own dismissal. She stated that when she refused Mr. Laitala's request she resign and take an inferior position, he told her: "You mean to tell me you're going to make me do all the paperwork to fire you". She argues this query indicated Mr. Laitala believed the progressive discipline procedure applied to her.

In addition, Ms. Payne furnished the court excerpts from Ms. Duren's deposition. Ms. Duren testified: "Department Managers were instructed by me and oriented by me that when they had discipline problems up to termination that they needed to follow the progressive disciplinary policy". While Ms. Duren refused to say the Hospital requires its managers to utilize progressive discipline, she stated they are expected to do so.

The Hospital responded with the declaration of Kelley Roberts, who is currently its human resources director. She said she reviewed the personnel files of the 11 hospital employees terminated since July 1, 1985. Based upon this review, Ms. Roberts concluded the Hospital did not have a practice of using progressive discipline before terminating employees. Attached to Ms. Roberts' affidavit are copies of the "Counseling/Disciplinary Action Form" for the terminated employees. These forms reflect that most of the persons terminated received only a prior oral and/or written warning. A few were placed on probation or suspension before they were fired.

Ms. Payne filed a supplemental statement in which she challenged Ms. Roberts' conclusion the Hospital had not practiced progressive discipline. Of the 11 persons the Hospital had terminated since 1985, Ms. Payne asserted four were probationary employees who could be terminated by the Hospital without following the progressive discipline policy; three were terminated for failing to appear for their regularly scheduled shifts, which, if

repeated, is cause for immediate termination; one quit after being given the option of quitting or being fired; another was fired after filing a negligence action against the Hospital; one received at least a written warning; and the remaining case received full progressive discipline.

The trial court concluded Ms. Payne had not raised an issue as to whether the Hospital had a practice of using progressive discipline upon which she reasonably relied. It therefore granted summary judgment in the Hospital's favor. Ms. Payne appeals.

Ms. Payne contends she raised an issue of material fact as to whether the Hospital provided her with reasonable notice it did not intend the manual to modify the employment-at-will relationship.

■ Employers can disclaim any intent to make the provisions of an employment manual part of the employment relationship. *Thompson v. St. Regis Paper Co.,* 102 Wn.2d 219, 230, 685 P.2d 1081 (1984). Such a disclaimer must state in a conspicuous manner that nothing contained in the manual is part of the employment relationship and is simply a general statement of company policy. *Thompson,* at 230. *See also* George L. Blum, Annotation, *Effectiveness of Employer's Disclaimer of Representations in Personnel Manual or Employee Handbook Altering At-Will Employment Relationship,* 17 A.L.R.5th 1 (1994).

■ The effect of a disclaimer may present a question of law or one of fact. *Swanson,* at 529. In *Swanson,* the plaintiff claimed never to have read the disclaimer, which appeared on page 6 of a benefits manual mailed to him several months after he began employment. The employee sought to rely on a later issued memorandum of working conditions which stated the company would provide employees with at least one warning before discharge. *Swanson* held at page 529 a question of fact existed as to whether the disclaimer provided effective notice to the employee.

In contrast, the disclaimers here appeared on the first

page of the manual containing the progressive discipline procedure on which Ms. Payne relied. The disclaimers clearly provide "cause" is not a requisite for discharge. One of the provisions advised the Hospital retains the right to terminate the employee for any reason or no reason; another recited that the policies contained in the manual "are implemented at the sole discretion of the hospital. . .". Further, Ms. Payne admitted she had read the disclaimers. In these circumstances, reasonable minds cannot differ. *Swanson,* at 528. The trial court properly determined as a matter of law the disclaimers were communicated to Ms. Payne.

Nevertheless, Ms. Payne asserts she raised an issue of material fact as to whether the disclaimers were effective. She argues the Hospital negated the disclaimers by its subsequent conduct.

■ In dicta, *Swanson* at 532-33, stated that even if an employer effectively disclaims its intent to be bound by language in a manual or a handbook, inconsistent representations and/or contradictory employment practices may negate the disclaimer (citing Michael A. Chagares, *Utilization of the Disclaimer as an Effective Means To Define the Employment Relationship,* 17 Hofstra L. Rev. 365, 392-93 (1980)). *Swanson* reasoned at page 536 that "an employer is not entitled to make extensive promises as to working conditions—promises which directly benefit the employer in that employees are likely to carry out their jobs satisfactorily with promises of assured working conditions—and then ignore those promises as illusory".

*Swanson* cites two cases from other jurisdictions as support for these statements. *Zaccardi v. Zale Corp.,* 856 F.2d 1473 (10th Cir. 1988) and *Johnson v. Nasca,* 802 P.2d 1294, 1297 (Okla. Ct. App. 1990). In *Johnson,* the employee appealed a summary judgment entered in favor of her employer on her action for breach of an employment contract. She contended she should not have been terminated before procedures described in an employee handbook were followed. The employer argued her employ-

ment was at-will. It cited language in the handbook that it was "written as a guide . . .", "should not be considered a contract or employment agreement . . .", and that the employer reserved the right "at any time to take any action it deem[ed] necessary in its sole discretion for [its] best interest . . .". The procedures the employee relied upon specified they would be "followed when possible, at the Hospital's discretion. . .". *Johnson,* at 1295-96.

In response, the employee in *Johnson* presented evidence other employees were discharged using the handbook procedures, and the personnel director testified she understood the procedures applied to all levels of employees. The plaintiff employee stated she had consulted with the personnel director and, from these discussions, believed the procedures had to be followed. She therefore utilized them in terminating employees under her supervision. As evidence the alleged disclaimer was ambiguous, the employee pointed to other language in the handbook stating the procedures "appl[ied] equally to all employees". (Italics omitted.) *Johnson,* at 1297.

*Johnson* reversed the trial court's summary dismissal of the employee's action. It pointed out that while an employer may disclaim the creation of contractual rights, the disclaimer must be clear. *Johnson* held at page 1297 that ambiguities in the handbook, *"when viewed in conjunction with a pattern of practice indicating the adoption and consistent use of these procedures . . .",* might lead to different conclusions about whether there exists an implied contractual right to use of the procedures. (Italics ours.)

In *Zaccardi,* the employee also appealed a summary judgment. He relied upon a personnel manual which required discharges be approved by "senior corporate management". The employer cited the foreword to the manual which stated: "This manual is not intended and shall not be interpreted to be a formal legal contract, binding on the company". (Italics omitted.) *Zaccardi,* at 1476 n.5.

The appellate court rejected the employer's argument that the disclaimer, as a matter of law, prevented employee reliance on the procedures in the manual. The court held at pages 1476-77: "A contractual disclaimer does not automatically negate a document's contractual status and must be read by reference to the parties' 'norms of conduct and expectations founded upon them'" (quoting *Hillis v. Meister,* 82 N.M. 474, 476, 483 P.2d 1314, 1317 (1971)). It deemed evidence that employer executives considered the manual a guide for employer-employee relations, coupled with the manual's use of mandatory language, sufficient to raise a genuine issue of material fact as to whether the manual modified the employment relationship. In particular, the court relied upon the manual's use of specific contractual terms as evidence of the employer's contractual intent.

In applying these precedents, the crucial question is whether the employee has a reasonable expectation the employer will follow the discipline procedure, based upon the language used in stating the procedure and the pattern of practice in the workplace.

The disclaimer here is clearer than those reviewed in *Johnson* and *Zaccardi.* It states the Hospital retains the right to discontinue an employee "without notice, for any reason or no reason". However, this statement is inconsistent with the Hospital's choice of terms in its progressive discipline policy, which begins by noting the Hospital's "obligation to retain employees who are qualified . . .", and then sets out "[t]he steps *to be followed* in . . . progressive discipline . . .". (Italics ours.) It is also inconsistent with another section of the manual which provides the procedures are not subject to waiver or modification without the written consent of the chief executive officer. Contrast *Nelson v. Southland Corp.,* 78 Wn. App. 25, 894 P.2d 1385 (1995), in which the progressive discipline policy was implemented at the supervisor's discretion.

Other evidence indicates the Hospital acted inconsistently with the disclaimers. Ms. Payne said both Penney

Duren, the personnel director, and Terry Laitala, the Hospital's assistant administrator, told her she "needed" to follow the progressive discipline procedure when she disciplined employees in her managerial capacity. She cited one instance in which she followed the procedure in terminating a clerk in her department. Ms. Duren did not contradict Ms. Payne's assertions. In fact, she acknowledged she instructed department heads about the "need" to follow the procedure. Nor does Ms. Roberts' affidavit as to the facts of specific terminations made since 1985 refute Ms. Payne's assertions. The Hospital does not deny that probationary employees and employees with unexcused absences were excepted from the progressive discipline procedure and accounted for a majority of the firings. Moreover, Ms. Roberts' affidavit does not address situations in which progressive discipline may have been used successfully to improve performance and, thus, avoid firing an employee.

In sum, Ms. Payne presented evidence sufficient to defeat the Hospital's motion for summary judgment. The mandatory language the Hospital used in the policy and elsewhere in the manual, when viewed in light of evidence it instructed managers to use progressive discipline, raises an issue of fact as to whether the Hospital intended to modify the employment relationship.

Reversed.

MUNSON and SCHULTHEIS, JJ., concur.

Reconsideration denied June 27, 1995.

Review denied at 128 Wn.2d 1002 (1995).