[No. 13434-2-III. Division Three. June 1, 1995.]

ROXANNE NELSON, *Appellant*, v. SOUTHLAND CORPORATION, *Respondent*.

*David H. Putney* and *Putney Mazzola Law Offices,* for appellant.

*Joseph D. Hampton,* for respondent.

THOMPSON, C.J. — Roxanne Nelson appeals the Superior Court's summary dismissal of her wrongful discharge ac-

tion against her former employer, Southland Corporation. Mrs. Nelson contends she raised issues of material fact regarding whether (1) the disclaimers in Southland's discipline and separation procedures provided reasonable notice to its employees it did not intend to modify the employment-at-will relationship, and (2) Southland negated the effect of the disclaimers by subsequent inconsistent practices. We affirm.

Mrs. Nelson went to work for Southland in December 1986, as a 7-11 store clerk. In 1991, Southland promoted her to store manager. In February 1992, Southland fired her for alleged violations of store policies. She subsequently brought this action for wrongful discharge, claiming Southland had made "specific promises of specific treatment" in documents provided her in the course of her employment, and had breached those promises when it terminated her.

Mrs. Nelson relied upon corporate policies and procedures 3-14 and 3-15, copies of which she received in a company seminar in September 1990. The first of these policies and procedures sets forth a "Progressive Counseling System". It provides that "[i]f an employee fails to perform to Performance Requirements or commits a Violation of Policy, the Progressive Counseling System may be initiated by that employee's supervisor". The progressive counseling system consists of four steps, starting with an informal discussion between the supervisor and the employee and concluding with involuntary separation if the other steps do not remedy the performance deficiency or if violations of policy continue. Southland Policy and Procedure 3-15 provides that terminations of employees with over five but fewer than 10 years' employment "shall be reviewed and approved" by the "respective Vice President".[1] Mrs. Nelson contended Southland did not follow either procedure when it discharged her.

---

[1] Mrs. Nelson originally contended her termination required the approval of a senior or executive vice president, based upon policy and procedure 3-33A. However, 3-33A was superseded by 3-15 before Southland fired her.

Southland answered and moved for summary judgment on the ground Mrs. Nelson's employment was at-will. In arguing its motion, Southland contended the following language found in both 3-14 and 3-15 disclaimed any intent on its part to change the at-will status of its employees:

> As the employee may sever the employment relationship at any time for any reason, or no reason, the Company may also sever the employment relationship at any time for any reason, or no reason.

The disclaimer was printed at the beginning of the statement of policy.[2]

The Superior Court granted Southland's motion for summary dismissal. It held Southland's employee policies and procedures, as set forth above, clearly reiterate the at-will employment status of Southland employees. The court also cited the fact that use of the company's progressive counseling system is discretionary. Specifically, the policy provides it *"may* be initiated" by the employee's supervisor. (Italics ours.) Although the separation policy states the termination of an employee who has served over five years "shall" be reviewed and approved by the respective vice president, the court found there was no dispute that Southland had followed the policy in Mrs. Nelson's discharge.

Mrs. Nelson moved for reconsideration, citing *Swanson v. Liquid Air Corp.*, 118 Wn.2d 512, 826 P.2d 664 (1992). In *Swanson*, the court observed at page 534 that "a disclaimer may be negated by inconsistent employer representations and practices". Mrs. Nelson referred the court to the deposition testimony of Diane Stone, who served as the Washington-Oregon personnel director for Southland. Ms. Stone testified that progressive discipline was not used in matters of "integrity", such as employee theft. She

---

[2]Similar disclaimers appeared in a variety of documents Southland provided Mrs. Nelson in the course of her employment. Mrs. Nelson signed at least two of these documents directly below the disclaimer.

believed there were other circumstances in which it was not used, although she could not think of any at the time of her deposition. But she also stated managers are marked down in their own evaluations if they do not use progressive discipline in dealing with their employees. Finally, Ms. Stone admitted Southland's field consultant telephoned her before she fired Mrs. Nelson. Ms. Stone advised her she had "cause" to fire Mrs. Nelson, based upon the alleged violations of policy.

Mrs. Nelson also referred the court to her affidavit, which stated she used the procedures when disciplining her employees:

> I had occasion as manager to fire several employees and on every occasion I was required to call Mrs. Stone in Seattle, set forth the reasons or regulations that had been violated and demonstrate what the cause was for the termination and the progressive nature of the discipline. Neither Mrs. Stone, nor my field consultant, nor anyone else that I ever consulted with at 7-11 told me I did not have to have a reason to fire people or that I could ever be fired without cause.

> We were specifically told that the reason we had to have cause to discharge an employee was because employees could file lawsuits for wrongful discharge and that we had to document the cause and use progressive discipline to make sure we were right before any termination occurred.

The trial court denied the motion for reconsideration. This appeal followed.

Mrs. Nelson contends an issue of material fact exists as to whether Southland provided its employees reasonable notice it did not intend the manual to modify the employment-at-will relationship.

Employers can disclaim any intent to make the provisions of an employment manual part of the employment relationship. *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 230, 685 P.2d 1081 (1984). Such a disclaimer must state in a conspicuous manner that nothing contained in the manual is part of the employment relationship and is simply a general statement of company policy. *Thompson,*

at 230. *See also* George L. Blum, Annotation, *Effectiveness of Employer's Disclaimer of Representations in Personnel Manual or Employee Handbook Altering At-Will Employment Relationship*, 17 A.L.R.5th 1 (1994).

 The effect of a disclaimer may present a question of law or one of fact. *Swanson*, at 529. In *Swanson*, the employee claimed never to have read the disclaimer, which appeared on page 6 of a benefits manual mailed to him several months after he began employment. The employee sought to rely on a later issued memorandum of working conditions which stated the company would provide employees with at least one warning before discharge. *Swanson* held at page 529 a question of fact existed as to whether the disclaimer provided reasonable notice to the employee.

In contrast, the policies and procedures Mrs. Nelson relies upon each contained separate disclaimers. Moreover, Mrs. Nelson admitted she received copies of these procedures in a management seminar. In these circumstances, reasonable minds cannot differ. *Swanson*, at 528. The trial court properly determined as a matter of law the disclaimers were communicated to Mrs. Nelson.

Nevertheless, Mrs. Nelson asserts she raised an issue of fact as to whether the disclaimers were effective. She argues Southland negated the disclaimers by its subsequent conduct.

In dicta, *Swanson*, at 532-33, stated that even if the employee has reasonable notice of a disclaimer, the employer's inconsistent representations and/or contradictory employment practices may negate its effect (citing Michael A. Chagares, *Utilization of the Disclaimer as an Effective Means To Define the Employment Relationship*, 17 Hofstra L. Rev. 365, 392-93 (1989)). *Swanson* reasoned at page 536 that "an employer is not entitled to make extensive promises as to working conditions—promises which directly benefit the employer in that employees are likely to carry out their jobs satisfactorily with promises of assured working conditions—and then ignore those promises as illusory".

*Swanson* cites two cases from other jurisdictions as support for these statements, *Zaccardi v. Zale Corp.*, 856 F.2d 1473 (10th Cir. 1988) and *Johnson v. Nasca*, 802 P.2d 1294, 1297 (Okla. Ct. App. 1990). In *Johnson*, the employee appealed a summary judgment entered in favor of her employer on her action for breach of an employment contract. She contended she should not have been terminated before procedures described in an employee handbook were followed. The employer argued her employment was at-will. It cited language in the handbook that it was "written as a guide . . .", "should not be considered a contract or employment agreement . . .", and that the employer reserved the right "at any time to take any action it deem[ed] necessary in its sole discretion for [its] best interest . . .". The procedures the employee relied upon specified they would be "followed when possible, at the Hospital's discretion . . .". *Johnson*, at 1295-96.

In response, the employee in *Johnson* presented evidence other employees were discharged using the handbook procedures, and the personnel director testified she understood the procedures applied to all levels of employees. The plaintiff employee stated she had consulted with the personnel director and, from these discussions, believed the procedures had to be followed. She therefore utilized them in terminating employees under her supervision. As evidence the alleged disclaimer was ambiguous, the employee pointed to other language in the handbook stating the procedures "appl[ied] equally to all employees". (Italics omitted.) *Johnson*, at 1297.

*Johnson* reversed the trial court's summary dismissal of the employee's action. It pointed out that while an employer may disclaim the creation of contractual rights, the disclaimer must be clear. *Johnson* held at page 1297 that ambiguities in the handbook, *"when viewed in conjunction with a pattern of practice indicating the adoption and consistent use of these procedures . . ."*, might lead to different conclusions about whether there exists an implied contractual right to use of the procedures. (Italics ours.)

In *Zaccardi,* the employee also appealed from a summary judgment. He relied upon a personnel manual which required discharges be approved by "senior corporate management". The employer cited the foreword to the manual which stated: "This manual is not intended and shall not be interpreted to be a formal legal contract, binding on the company". (Italics omitted.) *Zaccardi,* at 1476 n.5.

The appellate court rejected the employer's argument that the disclaimer, as a matter of law, prevented employee reliance on the procedures in the manual. The court held at pages 1476-77: "A contractual disclaimer does not automatically negate a document's contractual status and must be read by reference to the parties' 'norms of conduct and expectations founded upon them' " (quoting *Hillis v. Meister,* 82 N.M. 474, 476, 483 P.2d 1314, 1317 (1971)). It deemed evidence that employer executives considered the manual a guide for employer-employee relations, coupled with the manual's use of mandatory language, sufficient to raise a genuine issue of material fact as to whether the manual modified the employment relationship. In particular, the court relied upon the manual's use of specific contractual terms as evidence of the employer's contractual intent.

In applying these precedents, the crucial question is whether the employee has a reasonable expectation the employer will follow the discipline procedure, based upon the language used in stating the procedure and the pattern of practice in the workplace.

Unlike the disclaimers reviewed in *Johnson* and *Zaccardi,* the disclaimers here are clear that "cause" is not required to discharge an employee.[3] They state Southland "may sever the employment relationship at any time for

---

[3]Mrs. Nelson contends the disclaimers mean Southland could terminate without cause only for nondisciplinary reasons, such as a reduction in force. However, the disclaimers do not limit their application to nondisciplinary discharges. They state Southland can terminate an employee *for any reason at any time.* Mrs. Nelson has not produced evidence to support her interpretation, other than her subjective belief. "An employer's unilateral declarations of a

any reason, or no reason . . .". In *Johnson*, the court specifically distinguished the situation before it from other situations in which the disclaimers were unambiguous. It cited *Shelby v. Zayre Corp.*, 474 So.2d 1069 (Ala. 1985), which held that a signed employment application which advised that employment was terminable at-will, "with or without cause or prior notice . . .", prevented the employee from relying upon general assurances during the hiring interview that she would not be laid off. *Johnson*, at 1297 n.1. The disclaimers here are similar to the one in *Shelby*.

The discipline procedure here is also distinguishable from the separation procedure in *Zaccardi*, which was framed in mandatory terms. *Zaccardi* emphasized that use of specific contractual terms was evidence of the employer's contractual intent. *See also Payne v. Sunnyside Community Hosp.*, 78 Wn. App. 34, 894 P.2d 1379 (1995), in which the progressive discipline policy was set out in mandatory terms. Southland's progressive counseling system was initiated at the discretion of the employee's supervisor. In these circumstances, Mrs. Nelson could not reasonably rely upon evidence Southland had a practice of using the disciplinary procedures.[4]

In sum, we hold the trial court correctly determined Mrs. Nelson had not shown a dispute of material fact. As a matter of law, by including the disclaimers within the very policies and procedures at issue, Southland provided Mrs. Nelson with reasonable notice it did not intend to be bound by them. In addition, the disclaimers were effective as a matter of law. Mrs. Nelson could not rely upon the

---

company policy of fair and just terminations, coupled with an employee's subjective understanding that his employer will not discharge him absent cause, is insufficient to convert an at-will to a for-cause contract". *Hill v. J.C. Penney, Inc.*, 70 Wn. App. 225, 234, 852 P.2d 1111 (citing *Thompson*, at 224), *review denied*, 122 Wn.2d 1023 (1993).

[4]We recognize Southland's policy and procedure 3-15 states that terminations of persons employed by the company more than five years "shall" be approved by the respective vice president. The evidence indicates that approval was secured here. Don Burnside, Southland's regional vice president, signed Mrs. Nelson's notice of employee separation on March 9, 1992.

fact Southland used the procedures in other disciplinary proceedings. Given the unambiguous nature of the disclaimers and the grant of discretion to supervisors in deciding whether to implement the progressive counseling system, it is clear Southland did not promise it would discharge only after using progressive discipline.

MUNSON and SCHULTHEIS, JJ., concur.