# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

NADENE RAPADA,                )
                              )       No. 74116-1-I
                Respondent,   )
                              )       DIVISION ONE
        v.                    )
                              )
NOOKSACK INDIAN TRIBE, and    )       UNPUBLISHED OPINION
STATE OF WASHINGTON, DEP'T    )
OF EMPLOYMENT SECURITY        )
                              )
                Appellants.   )       FILED: June 20, 2016

SPEARMAN, J. — Nadene Rapada was the accounting director for the Nooksack Indian Tribe (NIT). NIT terminated Rapada for processing a mileage reimbursement request without first having the request approved as required by NIT's written accounting policy. Rapada did not dispute that she violated NIT's official policy. She argued that after-the-fact approval was common practice at NIT and following that practice, rather than the official policy, was a good faith error in judgment.

The Employment Security Department (ESD) initially decided that Rapada was eligible for unemployment benefits. On NIT's appeal of this decision, the ESD commissioner reversed concluding that Rapada was discharged for misconduct that amounted to wanton disregard of the employer's interest and

was thus ineligible for unemployment benefits. Rapada appealed to the superior court which reversed the commissioner's decision.

We also conclude the commissioner erred and affirm the superior court.

## FACTS

In 2013, Rapada was NIT's accounting director. She had been employed by NIT for nearly thirty years, during which time the only disciplinary notice she received was for tardiness. Rapada earned about $100,000 a year.

NIT's manual of accounting policies established a procedure for employee reimbursement requests. For a mileage reimbursement, the claimant was required to submit a requisition and a mileage log to the department director for approval. After obtaining the director's signature, the documents could be submitted to accounting staff for processing. Although this policy had been adopted in 2005, NIT's implementation of the policy had recently changed. The change in practice was an agenda item for accounting meetings in 2013.[1]

Accounting staff were required to get approval from Jeff Meyer, the chief financial officer. CP at 191-92. In December 2013, Meyer was on vacation. He delegated authority to approve reimbursements to NIT's controller, Elizabeth Ames.

Friday, December 20 was the last day NIT offices were open before a week-long holiday. Rapada worked with accounting staff to issue payroll and

---

[1] The agenda items indicate that, until 2013, NIT accepted approval from other employees in lieu of the director.

other checks before the closure. Ames was at work but was in a meeting in another building most of the day.

Rapada had prepared a requisition and mileage log for her own business-related travel some weeks before but had not submitted the documents for approval. Rapada asked an accounting employee to process the reimbursement request with the understanding that Ames would sign the paperwork when she returned from her meeting. Rapada did not contact Ames to request approval before instructing the employee to process the request. The employee processed the request, gave Rapada a check, and placed the requisition and mileage log on Ames's desk.

Ames returned from her meeting about 5:00 p.m. and found the documents for Rapada's request.. She noticed that the check had already been issued. Ames examined the request to determine if she could approve it. The mileage log reflected five instances of business travel that totaled $65.54 in mileage reimbursement. One of the entries was travel from Rapada's home to an NIT building on a weekend to change the clocks for daylight savings time. Reimbursement for that trip amounted to $11.86.

Ames went to Rapada's office and told her that the trip to change the clocks was not approved for reimbursement because it was commuter mileage. Rapada told Ames that she had been making a special trip to work to change the clocks for daylight savings time for years and had always gotten paid for it. Ames and Rapada remained at work for about two more hours. They consulted each other about various accounting items but had no further discussion about

mileage reimbursement. Sometime after their conversation but before Ames and Rapada left work, Ames reported to Meyer and to NIT's general manager that Rapada had tried to receive reimbursement for unallowable mileage.

Rapada stated that she assumed that Ames had signed the approval documents because there was no further discussion about the mileage. She left work about 7:00 p.m. and cashed the reimbursement check on her way home.

On December 27, Rapada learned that she had been terminated. The letter of termination states that expense reimbursements must be approved by the director prior to submission to accounting. It states that NIT's "standard procedures and controls were circumvented by processing the entire transaction leading to a check being executed without any prior review and approval." Clerk's Papers (CP) at 122. The letter also states that Ames would not have approved the request because of the entry for unallowable mileage.

Rapada applied for unemployment benefits. The ESD initially decided that she was eligible because NIT had not shown that Rapada willfully or intentionally violated NIT's policies. NIT appealed and a hearing was held before an administrative law judge.

NIT presented evidence of the reimbursement procedure established in the accounting manual. Meyer testified that director approval was necessary prior to any check being issued and that he had never instructed staff to sign documents after the fact. He stated that, during annual audits, he sometimes found documents that had been erroneously left unsigned. He denied having those documents signed after the fact but did not explain how he rectified the

missing signatures. He stated that audits from the last two years had not revealed any key documents that were lacking signatures.

Meyer also testified that Rapada had driven to NIT to change the clock for daylight savings time in the past. He did not know if she had been paid or reimbursed for this duty. He stated that the disputed reimbursement was the only request for mileage reimbursement Rapada submitted in 2013. He did not review records from other years to determine if NIT had reimbursed Rapada's mileage for changing the clocks in previous years. He stated that Rapada had never been dishonest, stolen from the tribe, or tried to hide anything.

Ames testified that she would have approved Rapada's request after the fact but for the unallowable commuter mileage. Ames stated that Rapada was "perfectly open" about the mileage request and did not try to hide anything. CP at 69.

Rapada did not dispute NIT's written policy concerning the procedure for approving reimbursement requests. She argued that the accounting department frequently processed checks before all the approval forms were signed off and later voided the check if necessary. She stated that she assumed Ames had signed the reimbursement documents because Ames knew Rapada had the check and said no more about it. She also stated that she had been receiving mileage reimbursement for changing the clocks for more than 15 years. A witness called by Rapada testified that obtaining after-the-fact approval for many different payments was common practice at NIT.

The administrative law judge ruled that NIT had not met its burden of proving that Rapada was discharged for misconduct and held that Rapada's action in cashing the check was a good faith error of judgment. On appeal, the ESD commissioner reversed. The commissioner made no findings as to credibility. He relied on the uncontested fact that Rapada violated the policy on pre-approval and ruled that this constituted a knowing violation of a reasonable company rule. Rapada appealed. The Whatcom County Superior Court held that the commissioner's decision was not supported by substantial evidence and reversed. NIT and the ESD appeal.

## DISCUSSION

Review of a decision made by the ESD is governed by the Washington Administrative Procedure Act (WAPA), chapter 34.05 RCW. Markam Group, Inc., P.S. v. State Dep't of Employment Sec., 148 Wn. App. 555, 560, 200 P.3d 748 (2009) (citing Verizon Nw, Inc., v. Employment Sec. Dep't, 164 Wn.2d 909, 915, 194 P.3d 255 (2008)). We review only the commissioner's ruling, not that of the ALJ or the superior court. Id. In reviewing the commissioner's decision, we apply the Act's standards directly to the administrative record. Id. We will reverse an administrative decision if (1) it is based on an error of law, (2) it is not based on substantial evidence, or (3) it is arbitrary or capricious. Tapper v. State Employment Sec. Dep't, 122 Wn.2d 397, 402, 858 P.2d 494 (1993).

Under RCW 50.04.294(1), a claimant is ineligible for unemployment benefits if he or she was discharged from employment for misconduct. "Misconduct" includes willful or wanton disregard of an employer's rights or

interests. RCW 50.04.294(1)(a). The statute identifies some specific actions as misconduct because those actions demonstrate willful disregard of the employer's rights. RCW 50.04.294(2). Included in this category is "[v]iolation of a company rule if the rule is reasonable and if the claimant knew or should have known of the existence of the rule." RCW 50.04.294(2)(f). "Good faith errors in judgment or discretion" are not misconduct. RCW 50.04.294(3)(c).

Whether an employee engaged in disqualifying misconduct is a mixed question of fact and law. Tapper, 122 Wn.2d at 402-03. We do not substitute our judgment for that of the commissioner on the credibility of the witnesses. Davis v. Dep't of Labor & Indus., 94 Wn.2d 119, 125, 615 P.2d 1279 (1980) (citing Beeson v. Atlantic-Richfield Co., 88 Wn.2d 499, 563 P.2d 822 (1977)). But we examine the commissioner's challenged findings of fact to determine whether they are supported by substantial evidence when viewed against the record as a whole. RCW 34.05.570(3)(e). Substantial evidence is evidence "sufficient to persuade a reasonable person that the declared premise is true." In re Griswold, 102 Wn. App. 29, 36, 15 P.3d 153 (2000) (citing Galvin v. Employment Sec. Dep't, 87 Wn. App. 634, 640-41, 942 P.2d 1040 (1997)).

Rapada challenges two of the commissioner's findings of fact.[2] Finding of Fact No. 3 states:

_____

[2] ESD asserts that Rapada did not challenge these findings in the superior court and they are therefore verities on appeal. Rapada, acting pro se, challenged the commissioner's "decision to deny my claim for unemployment benefits on the erroneous basis that I engaged in misconduct." CP at 1. We conclude that she assigned error to all of the commissioner's findings leading to denial of her claim for benefits.

> The employer has a policy dealing with the process of requesting and obtaining reimbursement for travel expenses. This policy requires written signature approval of the employer's Chief Financial Officer (CFO) for reimbursement of such expenses. The claimant was aware of this policy.

CP at 326. Rapada argues that this finding is not supported by substantial evidence because it does not take into account evidence of NIT's common practice. We agree.[3]

Despite an employer's written policy statements, the employer's practices may create a reasonable expectation as to workplace rules. In Griswold, a supermarket employee was fired because she purchased outdated meat at a discounted price. Griswold, 102 Wn. App. at 31. The employee handbook prohibited employee discounts, although there was some ambiguity in the relevant provision. Id. at 38. At least some of Griswold's managers routinely authorized employee discounts for outdated meat and many employees made such purchases. Id. at 39. Despite the company's official policy, the commissioner refused to fault Griswold for engaging in a common practice encouraged by her manager. Id. at 42. This court affirmed. Id. We held that the company's "written corporate policies ... were inconsistent with company practice." Id. We noted that engaging in a common practice that was encouraged by the manager did not constitute willful disregard of the employer's interest. Id.

---

[3] Relying on Davis, 94 Wn.2d 119, appellants ESD and NIT assert that we may not overturn the commissioner's finding and thus substitute our judgement for his. They are mistaken. Davis states that where a finding of fact is unchallenged it is a verity on appeal. Id. at 123. But where, as here, a finding of fact is challenged, we may only uphold that finding if it is supported by substantial evidence. Id.

Our conclusion in Griswold is consistent with case law holding that the written terms of employment contained in an employee handbook or other official document may be altered by inconsistent employer practices. See, e.g., Swanson v. Liquid Air Corp., 118 Wn.2d 512, 534-35, 826 P.2d 664 (1992) (stating that an employer's written disclaimer may be negated by inconsistent practices); Payne v. Sunnyside Cmty. Hosp., 78 Wn. App. 34, 42, 894 P.2d 1379 (1995) (stating that "the crucial question is whether the employee has a reasonable expectation the employer will follow the [written] discipline procedure, based upon the language used in stating the procedure and the pattern of practice in the workplace").

In this case, it was undisputed that NIT had a corporate policy requiring signature approval prior to processing a reimbursement request. But evidence from both parties indicated that after-the-fact approval was a common company practice. Rapada testified that accounting staff routinely sought after-the-fact approval. A witness called by Rapada testified that after-the-fact approvals were common for many types of employee payments.

Meyer testified that checks were not issued without prior approval.[4] But Ames testified that she examined Rapada's reimbursement request knowing that the request had already been processed. She stated that she would have approved the request after the fact but for the contested mileage. Ames reported

---

[4] Meyer also testified that the last two audits had not revealed any key documents that were lacking signatures. But this testimony does not address the question of whether documents were signed before or after requests were processed.

Rapada, not for failing to seek prior approval, but for seeking reimbursement for mileage Ames believed was not eligible for reimbursement. We conclude that NIT's corporate policy concerning approval of reimbursements was inconsistent with its practice. The commissioner's finding that NIT's written policy was the rule of the workplace is not supported by substantial evidence.[5]

Rapada next argues that the commissioner erred in concluding as a matter of law that her actions were misconduct within the statutory meaning. We review the application of the law to the facts de novo. Tapper, 122 Wn.2d at 403.

The commissioner concluded that Rapada's conduct was "in willful and wanton disregard of the rights, title and interests of her employer" and "was in violation of a reasonable employer policy." CP at 327. He thus ruled that Rapada committed misconduct per se under RCW 50.04.294(2)(f) by violating a reasonable company rule. We disagree.

A claimant commits misconduct per se when she violates "a company rule if the rule is reasonable and if the claimant knew or should have known of the existence of the rule. . . ." RCW 50.04.294(2)(f). But in this case, the evidence of both parties indicated that employees routinely sought and received after-the-fact approval for reimbursements. Because Rapada followed a routine company practice, we conclude that her conduct does not constitute violating a company rule and that she did not commit misconduct per se under RCW 50.04.294(2)(f).

---

[5] Rapada also challenges the commissioner's fifth finding of fact, which summarizes Rapada's actions in having the reimbursement request processed and cashing the reimbursement check. Rapada argues that the finding mischaracterizes her motivation and intent. But the finding summarizes the uncontested facts of the incident. It does not draw a conclusion about Rapada's motivation or intent. The finding is supported by substantial evidence.

ESD argues that, even if Rapada did not commit misconduct per se, she committed misconduct by willfully disregarding her employer's interests. An employee acts in willful disregard of an employer's interests when she is aware that her actions jeopardize the employer's interest and nonetheless intentionally performs the act. Hamel v. Employment Sec. Dep't, 93 Wn. App. 140, 146-47, 966 P.2d 1282 (1998); WAC 192-150-205(1).

ESD asserts that Rapada acted in willful disregard by processing the mileage reimbursement before it was approved. ESD argues that Rapada was aware of the importance of NIT having "clean audits" in order to continue receiving federal funding and that by processing the reimbursement without prior approval Rapada jeopardized this interest. ESD Br. at 18. We disagree.

ESD fails to show that after-the-fact approval jeopardized NIT's interest in obtaining a clean audit. Meyer testified to the importance of having signatures in place on all key documents when those documents were reviewed at the annual audit. He gave no testimony concerning documents signed after processing but before the audit. Had Rapada failed to seek approval for her request at any time, the request documents would presumably have remained unsigned and prevented a clean audit. But that is not the case here. Rapada sought approval on the same day her request was processed. There is no indication that approval granted in this manner would have any impact on NIT's audit. The evidence in the record establishes that employees routinely obtained approval after the fact. While following this practice, and not adhering to the letter of NIT's written policy,

may have been an error in judgment, we reject ESD's argument that it demonstrated willful disregard for NIT's interest.

ESD also argues that Rapada willfully disregarded NIT's interest by cashing the reimbursement check although Ames told her that the mileage for changing the clocks was not approved. Rapada argues that she made a good faith error in judgment in cashing the check without verifying that Ames had signed the reimbursement request. We agree with Rapada.

The evidence established that Rapada had been driving into work on a weekend to change the clocks for daylight savings time for many years. Her testimony that she had been paid or reimbursed for performing that task was unrebutted.[6] Rapada sought reimbursement for the task openly. Ames told her that commuter mileage could not be reimbursed, but pursued no further discussion on the subject. Notably, Ames did not respond to Rapada's assertion that she had received mileage reimbursement for changing the clocks for many years.

We conclude that, on the facts of this case, Rapada made an error in judgment in failing to verify the status of her reimbursement with Ames before cashing the check. A good faith error in judgment is not misconduct that disqualifies a claimant from receiving unemployment benefits. RCW 50.04.294(3)(c). Because we reverse the commissioner's ruling, the superior court judgment is affirmed.

---

[6] NIT expressly did not verify whether Rapada had received mileage reimbursement for the task in previous years.

Rapada requests attorney fees pursuant to RCW 50.32.160. Under RCW 50.32.160, a claimant is entitled to reasonable attorney fees when an appellate court reverses the decision of the commissioner. Because she prevails here, Rapada is entitled to attorney fees and costs on appeal under RCW 50.32.160, assuming compliance with RAP 18.1(d).

Affirmed.

_Spearman, J._

WE CONCUR:

_Trickey, ACJ_          _Schindler, J_